PLAYTEX PRODUCTS, INC.,
Plaintiff–Appellant,

v.

GEORGIA–PACIFIC CORPORATION
and Fort James Operating Corpo-
ration, Defendants–Appellees,

No. 03–7946.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 13, 2004.

Decided: Nov. 23, 2004.

Michael Aschen, New York NY, for plaintiff-appellant.

Stephen P. Demm (Albert Robin, Thomas G. Slater Jr., John Gary Maynard III, Edward T. White, on the brief), Richmond, VA, for defendants-appellees.

Before: JACOBS, SOTOMAYOR and HALL, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Plaintiff-appellant Playtex Products, Inc. ("Playtex" or "plaintiff") appeals from an order of the United States District Court for the Southern District of New York (Baer, J.) granting summary judgment for defendants Georgia–Pacific Corp. and Fort James Operating Corp. (collectively, "Georgia–Pacific" or "defendants") and dismissing plaintiff's claims of trademark infringement under 15 U.S.C. § 1141, false designation of origin under 15 U.S.C. § 1125(a), dilution under 15 U.S.C. § 1125(c), dilution under N.Y. Gen. Bus. L. § 360–1, and unfair competition under common law. *See Playtex Prods. Inc. v. Georgia–Pacific Inc.*, 67 U.S.P.Q.2d 1923, 1925 (S.D.N.Y.2003). Plaintiff, maker of "Wet Ones" pre-moistened wipes, seeks damages and injunctive relief for defendants' use of the mark "Quilted Northern Moist–Ones" on its pre-moistened wipes. Because (1) the challenged junior trademark is not confusingly similar to the senior mark, (2) there is no evidence of actual consumer confusion, and (3) there is no

evidence of bad faith on the part of defendants, we affirm the district court's dismissal of the claims for trademark infringement, false designation of origin and unfair competition. In light of the substantial differences between the two marks and Playtex's failure to demonstrate actual dilution, we also affirm the dismissal of plaintiff's dilution claims under federal and New York state law.

## BACKGROUND

Over twenty years ago, plaintiff Playtex Products Inc. registered "Wet Ones" as a mark for pre-moistened towelettes with the United States Patent and Trademark Office ("PTO"). "Wet Ones," according to Playtex, is the market leader for pre-moistened bath tissue, and in the last six years the company has sold $170 million worth of these wipes.

Georgia–Pacific Corp. owns the Quilted Northern brand, which has been on the market for about 100 years [1] and has sold $3 billion worth of bath tissue—wet and dry—in the last five years. In 2001, Georgia–Pacific introduced its first generation pre-moistened wipes product, "Quilted Northern Fresh & Moist," which did not fare well in the market. Shortly thereafter, Georgia–Pacific launched a second-generation product with a new name: "Quilted Northern Moist–Ones." An intent-to-use application for "Quilted Northern Moist–Ones," as well as for "Moist–Ones," was filed with the PTO in April of 2002, and Georgia–Pacific released the new product into the market in July of that year. Though Playtex claims that Georgia–Pacific continues to prosecute the application for "Moist–Ones" (without the "Quilted Northern" name attached), Georgia–Pacific claims to have now abandoned that application and disclaims any intent to use "Moist–Ones" alone. Photographs of

---

1. For much of its existence, Quilted Northern    was known simply as "Northern."

Georgia–Pacific's trademark in the record confirm that its wipes are labeled as "Quilted Northern Moist–Ones" on the packaging.

Playtex responded to Georgia–Pacific's new product with a lawsuit for trademark infringement under 15 U.S.C. § 1141, for false designation of origin under 15 U.S.C. § 1125(a), for dilution under 15 U.S.C. § 1125(c), for dilution and unfair competition under N.Y. Gen. Bus. L. § 360–1, and for unfair competition under common law. Both parties moved for summary judgment before Judge Harold Baer, Jr. of the Southern District of New York, who in August 2003 granted Georgia–Pacific's motion and dismissed Playtex's claims. *See Playtex Prods. Inc,* 67 U.S.P.Q.2d 1923. Judge Baer analyzed the infringement claim under the framework established by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.1961). Relying heavily on the "dissimilarity in the mark[s] themselves, the differences in the way the products are presented to consumers, and Georgia–Pacific's prominent use of its own house brand on the product's package," 67 U.S.P.Q.2d at 1929, Judge Baer found that Playtex had failed to demonstrate a genuine issue of material fact about the likelihood of consumer confusion and ruled in favor of Georgia–Pacific. *Id.* at 1928–30. Given that there was no likelihood of consumer confusion, the court dismissed the false-designation-of-origin and unfair-competition claims as well. *Id.* at 1930. Finally, the court found that the same dissimilarity compelling its conclusions with regard to infringement also compelled a finding that there was no viable dilution claim. *Id.* at 1931. Playtex appealed.

## DISCUSSION

### A. Trademark Infringement

■ Under 15 U.S.C. § 1114(1)(a), a plaintiff may prevail on a trademark claim upon showing that the defendant used in commerce, without plaintiff's consent, a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...." There are two key components of trademark infringement under this provision: the plaintiff must prove (1) that its trademark is protectable and (2) that the defendant's mark is likely to confuse consumers as to the source or sponsorship of its product. *See Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 45 (2d Cir.2000) (*"Nabisco II "*). The first of these questions relates closely to the second, because a trademark's distinctiveness—the key consideration in assessing its protectability—is also a factor in determining the likelihood of confusion. *See, e.g., Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146–47 (2d Cir.2003).

■ The likelihood-of-confusion inquiry turns on whether " 'numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.' " *Cadbury Beverages v. Cott Corp.,* 73 F.3d 474, 477–78 (2d Cir.1996) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1077 (2d Cir.1993)). To support a finding of infringement, there must be a "probability of confusion, not a mere possibility." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 121 (2d Cir.2001) (citation and internal quotation marks omitted). This standard does not change on summary judgment. "The fact that on summary judgment the evidence must be construed in a light favorable to the non-moving party does not modify the

standard itself, which requires a showing of a probability, or likelihood, of confusion." *Id.*

In addressing the likelihood of confusion, courts in the Second Circuit apply the eight factors set forth in *Polaroid Corp.*, 287 F.2d at 495:

(1) the strength of plaintiff's mark;

(2) the similarity of the parties' marks;

(3) the proximity of the parties' products in the marketplace;

(4) the likelihood that the plaintiff will "bridge the gap" between the products;

(5) actual consumer confusion between the two marks;

(6) the defendant's intent in adopting its mark;

(7) the quality of the defendant's product; and

(8) the sophistication of the relevant consumer group.

*See Nabisco II*, 220 F.3d at 46.

Where the predicate facts are beyond dispute, the proper balancing of these factors is considered a question of law. *Id.* When balancing the factors, district courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins. *Id.* Instead, the court "should focus on the ultimate question of whether consumers are likely to be confused." *Id.* (citing *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir.1993)).

On appeal from a grant of summary judgment, the findings with respect to predicate facts underlying each *Polaroid* factor are reviewed with "considerable deference" to the district court.[2] *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 215 (2d Cir.2003) (quoting *Cadbury Beverages*, 73 F.3d at 478); *see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir.1986). The district court's balancing of the *Polaroid* factors is subject to *de novo* review. *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir.2004).

### 1. Applying the *Polaroid* Factors.

Before turning to the *Polaroid* issues that are central to this appeal, we briefly address those factors which are relatively insignificant here or that are not in serious dispute. *See* 67 U.S.P.Q.2d at 1926–27. It is beyond question that the products, customers, and channels of trade here are not different, and may be identical. A wet wipe is a wet wipe, and there is no reason to believe that consumers see it differently. To the extent there is any difference between the product segments, the other segments would be natural areas of expansion for Wet Ones. Therefore, as Judge Baer found, the proximity and bridge-the-gap factors weigh in Playtex's favor. *Id.* at 1927. The sophistication-of-consumer factor also weighs in Playtex's favor, because consumers cannot be expected to invest much time or effort in distinguishing among inexpensive bath tissues. *Id.* at 1927; *see also Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d

---

**2.** We acknowledge the tension in our prior cases regarding the proper standard of review for predicate facts in an appeal of summary judgment. Language from some cases establishes a clearly-erroneous standard for reviewing the lower court's rulings on the predicate facts, *see, e.g., Nabisco II*, 220 F.3d at 45, 46, while other cases state that the standard, while considerably deferential, stops short of the clearly-erroneous standard, *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 215 (2d Cir.2003). Because *Patsy's Brand* is the most recent statement on the matter, we proceed with the assumption that the Court has established a considerable-deference standard.

Cir.1999) ("Purchasers of relatively inexpensive goods ... are held to a lesser standard of purchasing care.") (citation and internal quotation marks omitted) (hereinafter "*Nabisco I*"), *abrogated on other grounds, Moseley v. V Secret Catalogue, Inc.,* 537 U.S. 418, 433, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003). As for the product-quality factor, Playtex does contend that Georgia–Pacific's product is inferior, but this is not alleged to be a major factor in the case. 67 U.S.P.Q.2d at 1927. Indeed, Playtex's briefs do not even mention this factor on appeal.

## 2. The Strength of the Mark

We turn next to the *Polaroid* factors discussed more extensively by the district court. The first of these, the strength of a trademark, encompasses two different concepts: "inherent distinctiveness" and "acquired distinctiveness." *Virgin,* 335 F.3d at 147. The scale of inherent distinctiveness, from least to most distinctive, is described in terms of marks that are: "(1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful." *TCPIP Holding Co., Inc. v. Haar Communications, Inc.,* 244 F.3d 88, 93 (2d Cir.2001). This Court has described generic marks as those "consisting of words that identify the type or species of goods or services to which they apply, [and that] are totally lacking in distinctive quality." *Id.* These marks are not protectable. "Descriptive marks" are, as the name suggests, those that describe a product or "its qualities, ingredients or characteristics." *Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1509 (2d Cir.1997) (citation and internal quotation marks omitted). The free-market policy considerations compelling the rule that

generic marks are unprotectable under trademark law also disfavor protection for descriptive marks. *TCPIP,* 244 F.3d at 93. Descriptive marks are nonetheless protectable when they acquire "secondary meaning." *See id.* at 94. "Suggestive marks" are those marks that "do not directly describe goods or services or their attributes, but rather are suggestive of them, have some distinctive quality and are thus protected without need to prove secondary meaning." *Id.* at 94; *see also Estee Lauder,* 108 F.3d at 1509 ("A suggestive mark is one that suggests the product, though it may take imagination to grasp the nature of the product." (citation and internal quotation mark omitted)). The most distinctive marks—those receiving the most protection—are marks that are "arbitrary or fanciful in relation to the products (or services) on which they are used." *Virgin,* 335 F.3d at 147.

Acquired distinctiveness, as opposed to inherent distinctiveness, refers to the "recognition plaintiff's mark has earned in the marketplace as a designator of plaintiff's goods or services." *Brennan's, Inc.,* 360 F.3d at 131. When there is widespread recognition of a mark among consumers, there is an increased likelihood that "consumers will assume it identifies the previously familiar user," and therefore an "increas[ed] ... likelihood of consumer confusion if the new user is in fact not related to the first." *Virgin,* 335 F.3d at 148.

Judge Baer concluded that the strength-of-the-mark factor favored Playtex because Wet Ones was a well-established, suggestive mark.[3] We agree with this finding, which Georgia–Pacific's brief on appeal

**3.** Judge Baer did not expressly refer to "inherent distinctiveness" or "acquired distinctiveness", but regardless of the terminology he used, it is evident that he engaged in the proper analysis. 67 U.S.P.Q.2d at 1927–28.

does not seriously dispute.[4]

Georgia–Pacific had previously claimed that Wet Ones was only descriptive. It is true that Wet Ones is descriptive in the sense that each of the words describes an attribute of the product—it is *wet* and it is dispensed *one by one*. As Judge Baer observed, however, the term "Wet Ones," without more, does not itself conjure up the image of a towelette. *See BIC Corps. v. Far Eastern Source Corp.*, 2000 WL 1855116 at *3 (S.D.N.Y. Dec.19, 2000) (holding that "Wite–Out" is suggestive and stating: "The name WITE–OUT could be descriptive of correction products in that most of the WITE–OUT products are white in color and used to take 'out' a mistake. However, although the name WITE–OUT is logically related to its use, the phrase without more does not imply a correction product."). Wet Ones, like Wite–Out, could plausibly describe a wide variety of products.

As for the district court's finding on acquired distinctiveness, there is likewise no error. Judge Baer noted that studies and surveys support Playtex's claim that Wet Ones is a well-established—indeed, famous—mark. 67 U.S.P.Q.2d at 1928. Georgia–Pacific provides no reason to doubt these findings. The strength-of-the-mark factor, therefore, weighs in Playtex's favor.

### 3. Similarity of the Marks

The crux of Playtex's appeal is its claim that, contrary to the district court's finding, the similarity-of-the-marks factor of the *Polaroid* test weighs in favor of Playtex. In so arguing, Playtex relies on its contention that the junior mark at issue is "Moist–Ones" standing alone, and not "Quilted Northern Moist–Ones." Defen-dants, however, disclaim ever having used "Moist Ones" alone and disclaim any intent to use "Moist–Ones" alone. They also aver that they have withdrawn an application filed with the Patent and Trademark Office to use "Moist–Ones" alone. Photographs of the product's packaging confirm that defendants include the "Quilted Northern" name in the mark. Moreover, plaintiff acknowledged at oral argument that it was not aware of any public use of the mark "Moist–Ones" without "Quilted Northern." We therefore agree with the district court's conclusion that defendants' mark is "Quilted Northern Moist–Ones" and not "Moist–Ones" alone. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 395 (2d Cir.1995) (accepting defendant's representation to the court that it would not use "T50" alone and ruling, in reliance on that representation, that the similarity-of-the-marks factor favored defendant).

Turning to the question of whether "Quilted Northern Moist–Ones" is, when presented as a whole, confusingly similar to "Wet Ones," we agree with the district court that it is not. Though "moist" and "wet" are almost synonymous, the words are dissimilar in sound and appearance. There are also differences in the way the products are "packaged and presented to consumers." *Playtex Prods.*, 67 U.S.P.Q.2d at 1928. Among the most important differences is the prominent inclusion of the words "Quilted Northern" on Georgia–Pacific's products. We have repeatedly found that the presence of a distinct brand name may weigh against a finding of confusing similarity. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123 (2d Cir.2001)

---

**4.** Georgia–Pacific's brief does describe the Wet Ones trademark as "descriptive" in the Statement of the Facts, but the brief fails to mention the issue at all in the Summary of the Argument or Discussion sections.

("Based on the record before us, we find that the presence of the prominent and distinctive labels alone negates any possibility of a likelihood of confusion ...."); *Nabisco II*, 220 F.3d at 46 (finding that "Dentyne Ice" and "Ice Breakers" are "at best marginally similar" and observing that "Warner–Lambert's prominent use of its well-known house brand ... significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products"); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir.1993) (finding no confusing similarity between "Right Guard Sport Stick" and "Sportstick" and stating that "when a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened"), *narrowed on other grounds by Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 46 & n. 10 (2d Cir.1994); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1045–46 (2d Cir.1992) (finding no confusing similarity between "Excedrin PM" and "Tylenol PM" and noting that "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion").

In contrast to the above line of cases, this Court has also held that, in some circumstances, "the addition of a trade name does not necessarily alleviate the problem of confusion of marks, and indeed, can aggravate it, as 'a purchaser could well think plaintiff had licensed defendant as a second user.'" *Arrow Fastener Co.*, 59 F.3d at 395 (citing *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir.1972)). *Arrow* addressed the tension between these two lines of cases and decided that, at least where the junior and senior marks are not identical, the presence of a trade name will tend to militate *against* a finding of confusion. In that case, we confronted the question of whether Stanley's use of "T50" as part of a longer model number was confusingly similar to Arrow's "Model T–50":

> Arrow relies on cases noting that the addition of a trade name does not necessarily alleviate the problem of confusion of marks, and indeed, can aggravate it . . .
>
> We might well have been receptive to Arrow's argument that the Stanley housemark aggravated rather than mitigated the possibility of confusion, had we been concerned with Stanley's initial use of T50 alone....
>
> Inasmuch as Stanley has represented to this court that it will not use T50 standing alone, the inquiry has shifted. Now we are considering whether Stanley's use of a six-digit model number that contains the symbol "T50" and appears on the same panel as the Stanley–Bostitch housemark is confusingly similar to Arrow's use of "Model T–50," accompanied by its housemark on the top and side panels of Arrow's packaging.
>
> ... [If] multi-digit model numbers appear near Stanley's housemark—a clear and familiar source of origin—it is unlikely that consumers will find these marks confusingly similar to Arrow's two-digit mark.

59 F.3d at 395. We apply a similar rationale in the instant case by considering the presence of Georgia–Pacific's housebrand in the context of other differences between the two marks. Georgia–Pacific's use of the word "moist" and the overall effect of the size, prominence, and placement of the words "Quilted Northern" on the packing of "Quilted Northern Moist–Ones" lead us to conclude that the district court's finding on similarity withstands the considerable deference that we accord such a finding under *Polaroid.*

#### 4. Actual Consumer Confusion

Plaintiff also contests the district court's finding that there was no evidence of actual consumer confusion. Plaintiff makes much of the fact that the search function of the website www.drugstore.com associates "Moist–Ones" with "Wet Ones." We agree with the district court, however, that "the fact that the computer associates 'moist ones' with 'Wet ones' reflects little, if anything, about whether consumers are actually confused." 67 U.S.P.Q.2d at 1929. Playtex also argues that there is evidence that a "substantial fraction of consumers who have not heard of Moist Ones 'recognize' that it is a brand of pre-moistened towelettes or wipes because of the word 'Ones.'" This argument misses the point. It does not matter that consumers may think, upon seeing "Quilted Northern Moist–Ones," that the product is a pre-moistened towelette similar to "Wet Ones." The question is whether consumers will think that "Quilted Northern Moist–Ones" come from the same *source* as "Wet Ones" products. *See Brennan's, Inc.*, 360 F.3d at 130; *TCPIP*, 244 F.3d at 101; *Nabisco II*, 220 F.3d at 45; *Cadbury Beverages, Inc.*, 73 F.3d at 477–78.

#### 5. Bad Faith

■ With regard to defendants' intent, plaintiff argues that Georgia–Pacific was aware of the existence and success of "Wet Ones" and that a jury "could infer from this alone that" Georgia–Pacific acted in bad faith. This is incorrect. Prior knowledge of a senior user's mark does not, without more, create an inference of bad faith. *See Arrow Fastener Co.*, 59 F.3d at 397. Plaintiff also complains that the district court "failed to even consider the study commissioned by Georgia–Pacific to choose the 'Moist Ones' tub design ... which stated that: 'A design similar to the current Playtex design may be appealing.'" Plaintiff's argument here is misleading, for the cited study referred to the design of the wipe *dispenser*, not to the design of the trademark. The study therefore does not support plaintiff's claims. *See Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir.1998) ("The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product."); *see also George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir.1992) ("Absent confusion, imitation of certain successful features in another's product is not unlawful and to that extent a free ride is permitted." (citation and internal quotation marks omitted)).

#### 6. *Polaroid* Balancing

■ Plaintiff complains that it was inappropriate to rule for defendants where five of the eight *Polaroid* factors weighed in plaintiff's favor. The *Polaroid* inquiry, however, is not a "mechanical process where the party with the greatest number of factors weighing in its favor wins." *Nabisco II*, 220 F.3d at 46 (citation and quotation marks omitted).[5] In an appropriate case, these important factors weigh *against* Playtex, while the factors weighing in its favor are, for the most part, less probative of likely confusion. In any case, even if *Sports Authority* does stand for the proposition that the party with the most factors on its side necessarily wins, that proposition has subsequently been rejected. *See Nabisco II*, 220 F.3d at 46.

5. In *Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir.1996), we did find that five factors favored the plaintiff, and that "under these circumstances it was error for the district court to enter judgment in favor of [defendant]." *Id.* at 965. Notably, however, the factors weighing in favor of plaintiff included such important factors as the similarity-of-marks factor, the actual-confusion factor, and the bad-faith factor. *Id.* In the in-

case, the similarity-of-marks factor may alone be dispositive. *Id.* Indeed, the court may in some circumstances grant summary judgment even without considering all of the *Polaroid* factors. *See id.* at 48.

Here, the district court did consider all of the factors, and found that, on balance, they favored defendant. We agree with the district court's *Polaroid* balancing. Particularly in light of the "dissimilarity in the mark[s] themselves, the differences in the way the products are presented to consumers, and Georgia–Pacific's prominent use of its own house brand on the product's package," we agree with Judge Baer that Playtex has failed to demonstrate a genuine issue of material fact about the likelihood of consumer confusion. *See Playtex Prods.*, 67 U.S.P.Q. 2d at 1929.

**B. False Designation of Origin and Unfair Competition**

■ Where marks are too dissimilar to support a claim for trademark infringement, they are likewise too dissimilar to support claims for unfair competition or false designation of origin. *See, e.g., Nabisco II*, 220 F.3d at 45; *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993); *Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 213 & n. 10 (2d Cir.1985). Accordingly, we affirm Judge Baer's dismissal of Playtex's false origin claims and unfair competition claims against Georgia–Pacific.

**C. Federal and State Dilution**

We also affirm the district court's dismissal of plaintiff's dilution claims, though we do not adopt the district court's reasoning in its entirety.

■ A plaintiff cannot prevail on a state or federal dilution claim unless the marks at issue are "very" or "substantially similar." *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 176 (2d Cir. 2000) (citation and internal quotation marks omitted). Because of the differences between the marks in the instant case—including the differences in the ways they are presented, the presence of the "Quilted Northern" name, and the fact that "Moist" and "Wet" do not appear or sound similar—we find that plaintiff cannot demonstrate the requisite similarity to sustain a dilution claim. *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir.1996) (holding that name "Spa'am'"s appearance in conjunction with the character likeness and the words "Muppet Treasure Island" created a dissimilarity that "alone" could defeat plaintiff's claim that its mark "SPAM" was being blurred in violation of dilution law).

■ Plaintiff's federal dilution claim fails also because no evidence of actual dilution exists. Contrary to what the district court stated, actual dilution is an indispensable component of a dilution claim under 15 U.S.C. § 1125(c). *See Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433, 123 S.Ct. 1115, 155 L.Ed.2d 1 (2003).[6] This does not mean that a plaintiff must show the actual *consequences* of dilution, such as lost profits. *Id.* Plaintiffs may rely on consumer surveys and other circumstantial evidence. Here, however, plain-

---

6. We note that New York state law may not require actual dilution, even after *Moseley*. *See Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 2004 WL 896952, at *8 n. 8 (E.D.N.Y. March 26, 2004) ("Since the *Moseley* decision in March 2003, the majority of New York federal district courts reviewing N.Y. Gen. Bus. Law § 360–1 have ruled that *Moseley* has not changed the prevailing state test for dilution, which focuses on the 'likelihood' of dilution rather than 'actual' dilution.") (collecting cases). A definitive resolution of that issue is not necessary here, because, as explained *supra*, plaintiffs' state dilution claim also fails on grounds of dissimilarity.

tiffs have failed to offer any evidence that could raise a genuine issue of material fact. Their briefs, for example, rely heavily on a survey conducted by Sandra Cohen. That survey, however, did not use any Georgia–Pacific packaging, but rather used index cards with the words "Moist–Ones" and "Wet Ones" placed out of context. Moreover, the index cards did not contain the words "Quilted Northern." The survey therefore cannot be offered as evidence that the mark "Quilted Northern Moist–Ones," as it is presented and packaged, has actually diluted the mark "Wet Ones." Joel H. Steckel's expert testimony suffered from the same flaw, for he analyzed the effects of "Moist–Ones" alone and drew no conclusions on whether "Quilted Northern Moist–Ones," as presented on the packaging, actually diluted the "Wet Ones" mark. Although evidence in the record may establish that consumers *associate* "Moist–Ones" with "Wet Ones," association is not sufficient to establish a dilution claim. *Moseley*, 537 U.S. at 433, 123 S.Ct. 1115.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court dismissing all of Playtex's claims.