**NATURAL ORGANICS, INC., Plaintiff–Counter–Defendant–Appellant,**

v.

**NUTRACEUTICAL CORP. and SOLARAY, INC., Defendants–Counter–Claimants–Appellees.**

Docket No. 03–9065.

United States Court of Appeals, Second Circuit.

Argued: Oct. 19, 2004.

Decided: Oct. 17, 2005.

Pasquale A. Razzano, Fitzpatrick Cella, Harper & Scinto, New York, N.Y. for Appellant.

Peggy A. Tomsic, Berman, Tomsic & Savage, Salt Lake City, UT (Chris R. Hogle, on the brief), for Appellee.

Before: JACOBS, SOTOMAYOR, and HALL, Circuit Judges.

JACOBS, Circuit Judge.

Natural Organics, Inc. ("Natural Organics") appeals from a judgment entered on October 3, 2003 in the United States District Court for the Southern District of New York (Owen, *J.*), dismissing its complaint against a rival manufacturer of soy protein drink mix. On appeal, Natural Organics challenges the dismissal of its claims of trade dress infringement and common law unfair competition.

## I

At issue are the trade dresses of two competing soy protein drink mixes: Natural Organics' "SPIRU–TEIN"; and "Soytein," which is made by Nutraceutical Corp. and Solaray, Inc. ("Nutraceutical"). Natural Organics alleges in essence that the Soytein label is virtually identical to the SPIRU–TEIN label, and that confu-

sion is likely between the two products in the marketplace.

After a four-day bench trial, the district court dismissed Natural Organics' claims in an opinion and order dated August 20, 2003. Natural Organics had submitted proposed findings-of-fact on the strength of their trade-dress, the similarity of their trade-dress to that adopted by Defendants, the marketplace proximity of the two products, the risk that defendants would enter product lines currently produced exclusively by Natural Organics, and defendants' bad faith; but the district court did not issue specific findings-of-fact on these issues.

The court found that the products' "trade dresses are sufficiently distinguishable considering their individual elements and the total impressions they give to customers," citing in particular certain differences in the "design and arrangement" of generic elements in both products' labels, and the different "type[ ], arrangement, and color" of the featured product names. At the same time, the court observed that the distinctiveness issue was "not completely free of question." The court concluded nevertheless that Natural Organics "failed to [show] that the sophisticated consumers who purchase[ ] these types of products are likely to confuse the Soytein trade dress with the SPIRU–TEIN trade dress."

Judgment was entered on October 3, 2003. Natural Organics did not move for amendment of the district court's ruling; on October 10, 2003, notice of this appeal was filed.

## II

In order to establish trade dress infringement or unfair competition, Natural Organics is required to show, *inter alia*, that Soytein's trade dress is likely to cause confusion in the marketplace between SPI-RU–TEIN and Soytein. 15 U.S.C. § 1125(a)(1)(A); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1043, 1048 (2d Cir.1992).

■■■ To determine the likelihood of confusion, "courts in the Second Circuit apply the eight factors set forth in [*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961) ]." *Playtex Prods., Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 162 (2d Cir.2004). These factors are:

(1) strength of the plaintiff's trade dress;

(2) similarity of the trade dresses;

(3) proximity of the products in the marketplace;

(4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product);

(5) evidence of actual confusion;

(6) the defendant's bad faith;

(7) quality of the defendant's product; and

(8) sophistication of the relevant consumer group.

*Id.* The district court's finding on each factor is reviewed with considerable deference; the balancing of the factors is reviewed *de novo. Id.* & n. 2. In balancing the *Polaroid* factors, "courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins. Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." *Id.* (quotation and citation omitted).

Natural Organics claims that the district court erred in concluding that the showing of likely confusion was insufficient. Natural Organics' first argument is that the district court should have made a finding

with respect to each *Polaroid* factor, but failed to do so. We agree.

■ The only factors discussed in the district court's opinion are: "similarity of the trade dresses," "sophistication of the relevant consumer group," and (arguably) "strength of the plaintiff's trade dress." [1] While we have previously said that a district court need not "slavishly recite the litany of all eight *Polaroid* factors in each and every case," *Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir.1988), our most recent cases on this issue confirm that it is " 'incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why.' " *New Kayak Pool Corp. v. R & P Pools, Inc.*, 246 F.3d 183, 185 (2d Cir.2001) (*quoting Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir.1995)); *see also Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir.1985) ("[T]he complexities attendant to an accurate assessment of likelihood of confusion require that the entire panoply of elements

constituting the relevant factual landscape be comprehensively examined.").

This requirement has a sound basis:

The steady application of *Polaroid* is critical … for it is only when the *Polaroid* factors are applied consistently and clearly over time that the relevant distinctions between different factual configurations can emerge. Litigants are entitled to the illumination and guidance this common-law process affords, and appellate courts depend on it for the performance of their assigned task of review.

*Arrow Fastener*, 59 F.3d at 400. In *Nabisco Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 46 (2d Cir.2000), we observed that "in an appropriate case, the 'similarity of the marks' factor can be dispositive." The prospect that the similarity factor may predominate in *balancing* the *Polaroid* factors does not, however, discount the importance on appeal of having in the record the district court's findings on all potentially applicable *Polaroid* findings. If we decide on appeal that a similarity find-

**1.** The author, writing for himself alone, would require more of the appellants. Faced with findings that addressed fewer than all eight *Polaroid* factors, a disappointed party should have filed a Rule 52(b) motion requesting additional factual findings before asking on appeal for a ruling that the *Polaroid* findings are incomplete. It is very probable that the appellant in this case has enlisted the help of this Court in pushing on an open door. Timely Rule 52(b) motions would reduce the risk that district courts are unnecessarily required on remand to remember their assessments of *Polaroid* factors months or years after the record was made. There is a split in the circuits on the question of whether to preclude appeals by parties who have not made use of Rule 52(b). Some circuits hold that a party's failure to make use of Rule 52(b) forecloses arguments on appeal that the district court failed to make certain factual findings, or that its findings lack sufficient specificity. *See, e.g., Miller v. Bittner*, 985 F.2d 935, 940–41 (8th Cir.1993); *Reliance Fin. Corp. v. Mil-*

*ler*, 557 F.2d 674, 681–82 (9th Cir.1977). The First Circuit, on the other hand, has held that failure to file a Rule 52(b) motion in the district court does not preclude appeal. *See Supermercados Econo, Inc. v. Integrand Assurance Co.*, 375 F.3d 1, 5 (1st Cir.2004).

Judges Sotomayor and Hall would not endorse a rule requiring that a party wishing to appeal the absence of a factual finding must first make a Rule 52(b) motion because such a rule would burden district courts with unnecessary Rule 52(b) motions. To the extent, like here, that parties have actually litigated a factual dispute and a party submitted a request for the factual finding, the omission of the finding is likely a conscious decision by the district judge that the finding is not necessary to the outcome. We may on occasion disagree, as we do here. But that does not alter our prior caselaw's holding that a district court need not "slavishly recite the litany of all eight *Polaroid* factors in each and every case." *Orient Express Trading Co.*, 842 F.2d at 654.

ing is incorrect, or that it may not predominate and control, a lack of findings on all factors will generally result in a costly and avoidable remand in order to elicit findings on the other *Polaroid* factors.

## III

In an appropriate case, this Court may undertake a full *Polaroid* balancing without the benefit of findings on each *Polaroid* factor. *See, e.g., Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1079 (2d Cir.1993); *Orient Express*, 842 F.2d at 654–55. We decline to do so here. Although the district court here found that the similarity factor favored Nutraceutical and although "in an appropriate case, the 'similarity of the marks' factor can be dispositive," *Nabisco*, 220 F.3d at 46, the district court itself expressed a reservation, noting that the dissimilarity of the SPIRU–TEIN and Soytein trade dresses is "not completely free of question." We agree; the similarity factor on which the district court chiefly relied is not dispositive. We cannot proceed, however, to evaluate the other *Polaroid* factors. The parties presented considerable evidence at trial on factors that the district court did not discuss, especially as to Nutraceutical's alleged bad faith.

For the foregoing reasons, the judgment is VACATED and REMANDED for proceedings consistent with this opinion.