Dennis F. GROSS, M.D., and M/D Skin Care LLC, Plaintiffs,

v.

BARE ESCENTUALS BEAUTY, INC., MD Formulations, Inc. f/k/a Bioceutix, Inc., and Bare Escentuals Beauty, Inc. f/k/a MD Beauty, Inc., Defendants.

Bare Escentuals Beauty, Inc. and MD Formulations, Inc., Counterclaimants,

v.

Dennis F. Gross, M.D., and M/D Skin Care LLC, Counterdefendants.

No. 03 Civ. 3089(RLC).

United States District Court, S.D. New York.

June 4, 2008.

286

Morrison Cohen LLP, Fred H. Perkins, of Counsel, New York, NY, for Plaintiffs.

Latham & Watkins LLP, Jennifer L. Barry, of Counsel, San Diego, CA, for Defendants.

## OPINION

ROBERT L. CARTER, District Judge.

Currently before the court is defendants' motion for partial summary judgment on plaintiffs' second and third claims for relief, and on defendants' tenth counterclaim for relief. For the reasons herein, the court denies defendants' motion for partial summary judgment on all of the aforementioned claims. The court finds that the issue of secondary meaning of the "Alpha Beta" mark is ripe for trial and must be determined before granting summary judgment on these claims.

## BACKGROUND

Dennis F. Gross is a well-known dermatologist based in New York City. *See* Second Am. Compl. ¶ 1. He is the principal founder and co-owner of MD Skincare

LLC, a New York limited liability company with its principal place of business in New York City. *Id.* at ¶ 2–3. MD Skincare formulates, sells, and markets skin treatment products in the United States and internationally. *Id.* at ¶ 2. Dr. Gross owns, and MD Skincare uses the following trademarks: 1) M.D. Skincare, 2) M.D. Skin Care, and 3) MD Skincare Dr Dennis Gross. *Id.* at ¶ 3.

Gross is also the creator of Alpha Beta peel products, and he is the owner of the "Alpha Beta" trademark in the United States. *Id.* at 93. Dr. Gross was issued a federal trademark registration for "Alpha Beta" on August 1, 2000, *id.* at ¶ 93, and sold products using this trademark through MD Skincare, *id.* at ¶ 96. The Alpha Beta products were first introduced in 1996, and have been distributed "widely through spa channels for use as a professional product administered by licensed estheticians." *Id.* at ¶ 97. Since 2002, they have also been distributed through retail channels. *Id.* at ¶ 98. The primary ingredients in the products are alpha and beta hydroxy acids. These acids peel off a layer of one's skin to aid in the exfoliation of dead skin cells. *See* Barry Decl. ¶ 12, Ex. R.

In early 2003, defendants contacted plaintiffs to claim that plaintiffs' use of the "MD Skincare" mark infringed upon the "MD Formulations" marks owned by defendants. *See* Barry Decl. ¶ 11, Ex. L. Plaintiffs initiated the instant lawsuit on May 1, 2003, seeking declaratory judgment that the "MD Skincare" marks were not infringing on defendants' trademarks. Compl. ¶¶ 7–25. The lawsuit was dismissed for lack of jurisdiction, and plaintiffs appealed. In the interim, defendants commenced two actions in the federal court in the Northern District of California, alleging trademark infringement of their "MD Formulations" marks and seek-

ing a preliminary injunction. No preliminary injunction was issued, and defendants agreed to "withdraw and waive any objections" to this court's personal jurisdiction over them for the purposes of this lawsuit.

In 2003, defendants launched their first peel products under the MD Formulations product line, naming the product line the "Alpha/Beta Customized Peeling System." *See* Leung Decl. ¶ 6. The launch of the Alpha/Beta product line was in 2003, at about the same time that the defendants complained of plaintiffs' use of the term "MD" as a component of their trade name. In September 2005, defendants introduced an updated alpha beta product line called the "Professional Alpha/Beta Complete Peeling Kit," which added a cleanser, moisturizers, and sunscreen to the original product. *Id.* at ¶ 7. Plaintiffs allege that they became aware of defendants' use of the "Alpha Beta" mark in 2006, during discovery in this litigation. Like plaintiffs' products, the main ingredients of defendants' Alpha/Beta line are alpha and beta hydroxy acids.

On January 20, 2006, plaintiffs filed an amended complaint in the lawsuit. This complaint did not include any claims related to the "Alpha Beta" marks. Plaintiffs first raised their claims regarding the "Alpha Beta" marks; when they filed a second amended complaint on September 18, 2006. The plaintiffs seek relief on the following bases in the second amended complaint: 1) declaratory judgment that defendants; do not have exclusive use of the mark "MD;" 2) relief because defendants allegedly infringed upon the "Alpha Beta" mark; 3) relief because defendants' alleged infringement was a violation of federal unfair competition law; 4) cancellation of the "MD" marks; 5) relief under common law unfair competition; and 6) relief because defendants allegedly violated New York General Business Law § 349. De-

fendants answered the second amended complaint, asserting several counterclaims. Defendants' counterclaims are as follows: 1) statutory and common law trademark infringement; 2) unfair competition; 3) statutory and common law trademark dilution; 4) trade dress infringement; and 5) cancellation of the "Alpha Beta" marks.

## DISCUSSION

Summary judgment is granted to the moving party only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R. Civ. P. "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir.2000) (*quoting Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir.1991)). The court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. *See Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F.Supp.2d 340, 343(E.D.N.Y.2007) (Dearie, J.) (citations omitted). Thus, district courts must resolve all factual ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir.2002) (*citing Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995)).

## 1. Partial Summary Judgment on Plaintiffs' Second Claim

The second claim in the complaint alleges that the defendants are infringing on the "Alpha/Beta" trademark, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1),[1] by using "alpha beta" on their professional products. To prove trademark infringement, plaintiffs must: prove that the defendants have 1) without consent, 2) used in commerce, 3) a copy, colorable imitation, or reproduction of a protectable mark, as part of the sale or distribution of goods, and 4) that such use is likely to create customer confusion. *See* 15 U.S.C. 1114(1)(a). The first two factors are not disputed in this matter. Defendants' product, "Alpha/Beta Customized Peeling System," was created without plaintiffs' permission and was used in the sale of goods. Thus, the primary factora that plaintiffs must prove are: "(1) that their trademark is protectable and (2) that the defendant's mark is likely to confuse consumers as to the source or sponsorship of its product." *Playtex Prods. Inc. v. Georgia–Pacific Corp.*, 390 F.3d 158, 161 (2d Cir.2004). First, we turn to the issue of whether the "Alpha Beta" mark is protectable.

---

**1.** In relevant part, Section 32 of the Lanham Act states the following:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided."

15 U.S.C. § 1114(1).

There are four categories of trademarks, which are afforded different levels of protection. These categories, listed from least distinctive to the most distinctive, are as follows: "(1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *See TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93 (2d Cir.2001) (citations omitted). Generic marks are marks "consisting of words that identify the type or species of goods or services to which they apply, [and] are totally lacking in distinctive quality...." *TCPIP Holding Co.*, 244 F.3d at 93. Generic marks are never protectable. "A mark is descriptive if it describes the products features, qualities, or ingredients in ordinary language or describes the use to which the product is put." *See Lane Capital Mgmt. Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). Descriptive marks generally are unprotectable under trademark law, however, may be protectable where they acquire "secondary meaning." *See Playtex Prods. Inc.*, 390 F.3d at 163. A mark is suggestive "if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie & Fitch v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976) (citations omitted). "Arbitrary or fanciful marks are ones that do not communicate any information about the product either directly or by suggestion." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 385 (2d Cir.2005).

The protectability of a mark is a factual question, viewed from the perspective of the purchasing public. *See Lane Capital Mgmt. Inc.*, 192 F.3d at 344. A certificate of registration with the Patent and Trademark Office is *prima facie* proof that the mark is protectable. *Id.* at 345. Consequently, defendants must rebut the presumption of the mark's protectability by a preponderance of the evidence. *See id.* However, the certificate of registration itself is not evidence of how the public views the mark. *Id.* It merely places the burden of proof on the defendants to rebut the presumption of protectability.

Defendants argue that plaintiffs' "Alpha Beta" mark is generic or, at best, descriptive in nature. Defendants claim that "Alpha Beta" refers to alpha hydroxy and beta hydroxy acids, which are two ingredients in plaintiffs' Alpha Beta Daily Facial Peel and Body Peel. Plaintiffs counter that the marks are not generic. Plaintiffs' Alpha Beta Daily Facial Peel and Body Peel involve a two-step exfoliation process. Plaintiffs argue that "Alpha Beta" is intended to reflect their product's two-step process, by referring to the first two letters of the Greek alphabet, and is thus a suggestive mark. *See* Pls. Memo. in Opp'n to Defs. Mot. at 14.

Plaintiffs' attempt to portray the: "Alpha Beta" mark as a suggestive mark is unsuccessful. Although plaintiffs contend that "alpha beta" refers to the two-step process involved in their peel products, and not the alpha and beta hydroxy acids in the products itself, there is no evidence that this meaning was ever conveyed to the purchasing public. Protectability must be viewed from the perspective of the purchasing public. *See Lane Capital Mgmt. Inc.* 192 F.3d at 344. Although registration creates a presumption of protectability, it is not proof of how the purchasing public views the mark. *See id.* Defendants have easily rebutted any presumption that the "Alpha Beta" mark is a suggestive mark. The only evidence that plaintiffs present to prove that "Alpha Beta" is a reference to the two steps in the peel is the self-serving testimony of Dr. Gross. All other evidence indicate that "Alpha Beta" refers to the alpha and beta hydroxy acids in the product, and this is

the meaning that was conveyed to the purchasing public. In fact, the products themselves do not refer to an "Alpha step" and a "Beta step." They refer to a "Step 1" and a "Step 2." The product's labeling indicates that Step 1 is the step with the alpha and beta hydroxy acids, further demonstrating that the "Alpha Beta" mark was intended as a reference to the alpha and beta hydroxy acids in the products' formula, not as a reference to a two-step process. The label for the products states "Alpha Beta Daily Body Peel Two Step System." Perkins Decl. ¶ 2, Ex. CC. This directly contradicts Dr. Gross's claim that Alpha Beta is a suggestive mark intended to convey the two steps in the daily peel. Otherwise, "Two Step System" would not be required on the products label and would instead be suggested by the term "Alpha Beta." Defendants have sufficiently rebutted, by a preponderance of the evidence, the presumption that the "Alpha Beta" mark is protectable as a suggestive mark.

Thus, the burden now lies on plaintiffs to prove that they have a protectable mark. No reasonable jury could find that the "Alpha Beta" mark was intended to suggest the two steps in the daily peel. Plaintiffs' "MD Skincare Story" states, "[Dr. Gross] created a revolution in skincare with his now-famous Alpha Beta Peel, using gentle-but-effective alpha-and beta-hydroxy acids." See Barry Decl. ¶ 18, Ex. Z. It makes no mention of "Alpha Beta" as a reference to the product's two steps, only the alpha and beta acids in the product. As such, plaintiffs are unable to meet their burden of proving that the mark is sugges-

tive. The "Alpha Beta" mark requires no "imagination, thought and perception to reach a conclusion as to the nature of goods," and thus, the mark is not suggestive. *Abercrombie & Fitch,* 537 F.2d at 11. Plaintiffs' marketing materials would lead the purchasing public to believe that "Alpha Beta" is a reference to the alpha and beta acids, not a reference to the Greek alphabet. Thus, as a matter of law, the mark is either generic or descriptive in nature.

■ Contrary to plaintiffs' contention, the fact that there are other ingredients in the product other than alpha and beta hydroxy acids is irrelevant. The use of "alpha beta" as a mark describes the key ingredients in the chemical peel, and may be viewed as descriptive in nature, or as a generic mark that refers to the species of facial peels with alpha and beta acids. Plaintiffs own submissions to the court indicate that the product was named after the alpha and beta hydroxy acids contained within it. Plaintiffs have provided a press release that states, "[the] pads [are] infused with alpha and beta hydroxy acids, plus a neutralizing compound...." This product description indicates that alpha and beta hydroxyl acids are key ingredients in the peel, despite the other ingredients that are present. Nonetheless, the court is not convinced that the mark is generic as a matter of law. A reasonable juror could find that the mark is descriptive in nature, and not a generic mark. The mark describes the product's features and ingredients and is not necessarily a "species" of goods.[2] Resolving this factual

2. The court recognizes that this inquiry is a matter of degree and that marks that are currently descriptive may later be recognized as generic with increased use within the trade. The Second Circuit has recognized the imprecision of differentiating between generic and descriptive marks by noting that the dis-

tinction between descriptive and generic marks is "chimerical" and "often illusory." *See Thompson Med. Co., Inc. v. Pfizer, Inc.,* 753 F.2d 208, 213 n. 8, 215 (2d Cir.1985). In the instant matter, plaintiffs included an article describing its Alpha Beta Daily Face Peel to evince the distinctiveness of the product.

ambiguity in favor of the plaintiffs, the court treats the mark as if it is a descriptive mark for the remainder of this discussion.

■ The next issue, assuming that the mark is descriptive, is whether plaintiffs' "Alpha Beta" mark has obtained an "acquired meaning" and is nonetheless protectable. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs. v. Ives Labs.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (citations omitted). The Second Circuit has outlined six factors for determining whether a descriptive mark has acquired a secondary meaning: 1) advertising expenditures, 2) consumer studies linking the mark to a source, 2) unsolicited media coverage of the product, 4) sales success, 5) attempts to plagiarize the mark, and 6) the length and exclusivity of the mark's use. *See Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir.1985). "The existence of secondary meaning is a question of fact with the burden of proof on the party claiming exclusive rights in the designation." *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir.1990) (citation omitted).

■ Proving secondary meaning requires a rigorous evidentiary Standard and is a heavy burden for plaintiffs to meet. *See 20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir.1987) (citations omitted). Plaintiffs have failed to conduct any consumer studies that link

the mark to its source. This failure may prove fatal to an argument that the mark has acquired a secondary meaning. While there have been several unsolicited media mentions of plaintiffs' product, the mark's use and exclusivity of the mark does not seem to weigh in plaintiffs' favor. The mark has been used since 1996, however, defendants have been able to identify thirty other skincare lines that also use the phrase "alpha beta" in their products during the relevant time frame. It appears as if plaintiffs have not been using this mark exclusively.

■ Nonetheless, determining secondary meaning is a fact-intensive inquiry that is generally avoided at the summary judgment phase. *See Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 169 (2d Cir.1991) ("The careful weighing of evidence necessary to determining secondary meaning renders it an unlikely candidate for summary judgment."). "The case against summary judgment is even stronger where the opposing party has not been afforded an adequate opportunity to seek potentially favorable information." *Id.* (*citing Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir.1983)). The parties have failed to adequately address the legal issues, as well the factual ambiguities regarding whether secondary meaning has been achieved. Both defendants and plaintiffs have devoted very little time to this issue in their briefs and submissions to the court. Consequently, the court declines to determine whether secondary meaning has been achieved. In short, the court holds that as a matter of law, the mark is not a suggestive mark or arbitrary

However, on the same page of this article, is a description of the "Alpha Beta Peel" provided in the Ritz–Carlton Hotel in Miami. Although plaintiffs may be formally affiliated with the hotel spa that provides this treatment, the description in the article makes little mention

of the use of MD Skincare products for the peel. Its usage in the article seems to suggest that "alpha beta" may eventually become a generic mark in the trade, if it is not already generic.

mark, but there is still a triable issue about whether the mark is a descriptive mark with or without secondary meaning, or, in the alternative, a generic mark.

■ To prevail on trademark infringement, plaintiffs must also prove that defendants' "Alpha/Beta" mark is likely to cause confusion. Critical to this inquiry is an analysis of the strength of plaintiffs' mark. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 § 2d Cir.1961).[3] Because the court is unable to determine the "Alpha Beta" mark's strength as a matter of law, the court declines determining the likelihood of confusion at this time. Consequently, defendants' motion for partial summary judgment on the second claim is denied.

## 2. Partial Summary Judgment of Plaintiffs' Third Claim

■ In their third claim for relief, plaintiffs argue that defendants engaged in unfair conduct by the use of the term "alpha/beta." Unfair competition may be proved where a mark creates a likelihood of consumer confusion as to the goods' source. *See* 15 U.S.C. 1125(a). Plaintiffs' mark is protectable under this provision only if the "Alpha Beta" mark is a descriptive mark that has acquired a secondary meaning. *See Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1040 (2d Cir.1992). As discussed above, at this time, the court is unable to determine whether the "Alpha Beta" mark is a descriptive mark with a secondary meaning, as a matter of law. Accordingly, defen-

dants' motion for partial summary judgment on plaintiffs' third claim for relief is denied.

## 3. Partially Summary Judgment for Defendants' Tenth Counterclaim

■ In their tenth counterclaim for relief, defendants argue that plaintiffs' "Alpha Beta" mark is subject to cancellation because it is an unprotectable mark. Section 14(c) of Lanham Act provides for cancellation of a mark whenever a mark "become[s] the common descriptive name of an article of substance." 15 U.S.C. § 1064(3). Where a descriptive mark has not acquired a second meaning, that mark is subject to cancellation. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 14 (2 Cir.1976) (holding that a mark that is a descriptive term may be cancelled); *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558, 565 (2d Cir. 1990) (granting cancellation where the descriptive mark, "Papercutter," did not acquire a second meaning); *see also Neapco v. Dana Corp.*, 12 U.S.P.Q.2d 1746, 1747 (Trademark Tr. & App. Bd.1989) ("[I]f it is established either that as of the time of registration, the registered mark was merely descriptive and lacked a secondary meaning, or that as of the present time, the mark is merely descriptive and lacks a secondary meaning, the cancellation petition would be granted."). As discussed above, the court is unable to determine whether "Alpha Beta" mark is a descriptive mark with a secondary meaning, as a matter for summary judgment. As such,

---

**3.** When determining the likelihood of confusion between two marks, courts in the Second Circuit consider the following factors: (1) *the strength of plaintiff's mark;* (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6)

the defendant's intent in adopting its mark;(7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group. *See Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 46 (2d Cir.2000) (interpreting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961)) (emphasis added).

plaintiffs' mark is not subject to cancellation at this time.

## CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment, pursuant to Rule 56, F.R. Civ. P., is denied.

**IT IS SO ORDERED.**