19-2750-cv
Car-Freshner Corporation v. American Covers, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2020

Argued:  September 21, 2020                    Decided: November 19, 2020

Docket No. 19-2750

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAR-FRESHNER CORPORATION, JULIUS SÄMANN LTD.,

       Plaintiffs - Appellants,

         V.

AMERICAN COVERS, LLC, FKA AMERICAN COVERS, INC, DBA HANDSTANDS, ENERGIZER HOLDINGS, INC., ENERGIZER BRANDS, LLC,

       Defendants - Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, RAGGI, BIANCO, *Circuit Judges*.

Appeal from a judgment of the Northern District of New York (Thomas J. McAvoy, District Judge), dismissing, on motion for summary judgment, a complaint filed by Car-Freshner Corporation and Julius Sämann Ltd. alleging trademark infringement, trademark dilution, and unfair competition by American Covers, LLC d/b/a Handstands, Energizer Holdings, Inc., and Energizer Brands,

LLC. *Car Freshner Corp. v. American Covers, LLC*, 419 F. Supp. 3d 407 (N.D.N.Y. 2019). The marks allegedly infringed and diluted are "Black Ice" and "Bayside Breeze."

Affirmed in part, reversed in part, and remanded.

Louis Orbach (Liza R. Magley, on the brief), Bond, Schoeneck & King, PLLC, Syracuse, NY, for Plaintiffs-Appellants Car-Freshner Corporation and Julius Sämann Ltd.

William H. Brewster, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, for Defendants-Appellees American Covers, LLC, Energizer Holdings, Inc., and Energizer Brands, LLC.

JON O. NEWMAN, *Circuit Judge*:

This appeal in a trademark case is somewhat unusual in that, in the context of products that directly compete with each other, one of the allegedly infringing marks uses the same two words of the senior user's mark but adds a word in front of, and a word after, that mark. Plaintiffs-Appellants Car-Freshner Corporation and Julius Sämann Ltd. (collectively "CFC") appeal from the August 8, 2019, judgment of the District Court for the Northern District of New York (Thomas J. McAvoy, District Judge), dismissing, on motion for summary judgment, their complaint against Defendants-Appellees American Covers, LLC d/b/a Handstands

("Handstands"), Energizer Holdings, Inc., and Energizer Brands, LLC (collectively, "Energizer").

The case concerns automotive air fresheners,[1] products that emit a pleasant scent in automobiles. Both CFC and Energizer sell these products. They use their trademarks as the name of the scents.

CFC contends that its trademark, consisting of the words "Black Ice," is infringed and diluted by Energizer's sale of products labeled with the words "Midnight Black Ice Storm" and also contends that its trademark, consisting of the words "Bayside Breeze," is infringed and diluted by Energizer's sale of products labeled with the words "Boardwalk Breeze." We conclude that the record developed by CFC sufficed to withstand Energizer's motion for summary judgment with respect to CFC's mark "Black Ice" but not its mark "Bayside Breeze." We therefore affirm in part, reverse in part, and remand.

## Background

*The products.* Almost all of CFC's product lines are marketed under the brand name "Little Trees." The products with the mark "Black Ice" include: (1) small two-

---

[1] Although the name of the corporate plaintiff is Car-Freshner Corporation, the parties describe their products as "fresheners," and that spelling will be used throughout this opinion, except when referring to the name of the corporate plaintiff or the name of this case. "Freshner" does not appear to be a word in the English language.

dimensional cardboard pine trees saturated with scented oil, suitable for hanging on a rear-view mirror; (2) vent wraps, a small plastic device that wraps around one of the slats on a car's interior vents; (3) vent clips, a larger version of a vent wrap that clips onto a car's interior air vent; (4) an item called "fresh links," small tear-shaped loops that can be hung from the rearview mirror; (5) spray cans; (6) spray pumps; and (7) fiber cans, sealed cans placed under a car seat, opened with a twist-top, containing scented fibers.[2] CFC's products with the mark "Bayside Breeze" include (1) cardboard trees, (2) vent wraps, and (3) fresh links.

CFC has sold air fresheners under the brand name "Little Trees" since 1952. CFC began selling air freshener products with a scent called "Black Ice" in 2004. CFC began selling these products with a scent called "Bayside Breeze" in 2013. Between 2013 and 2018, CFC's net sales of "Black Ice" products to its retailer and distributor customers in the U.S. totaled tens of millions of dollars annually. CFC's net sales of "Bayside Breeze" products to its retailer and distributor customers in the U.S. were less than $50,000 in 2013, increasing to more than $4,000,000 by late 2018.

---

[2] CFC's fiber can product, which was first marketed after this lawsuit began, does not display the brand name "Little Trees" in the same way as the other Little Trees automotive air freshener products, but depicts as a logo the small pine tree design seen on all of CFC's products.

Energizer's product line is marketed under the brand name "Refresh Your Car!," which has had more than $50 million in total sales annually since 2015. It acquired this brand name and product line from Handstands in July 2016. The products at issue in this case are labeled with the words "Midnight Black Ice Storm" and "Boardwalk Breeze." The former include 4- and 6-pack vent sticks, diffusers, mini diffusers, and gel cans. The latter is available only as 4-pack vent sticks.

Energizer has sold a Handstands product with a single scent called "Ice Storm" for several years and continues to sell it under the brand name "Driven." Shortly after Energizer acquired Handstands in 2016, it began selling two new products with a single scent, one called "Midnight Black" and another called "Boardwalk Breeze," and, pertinent to the pending case, new products with two scents, one called "Midnight Black" and another called "Ice Storm," labeled with the words "Midnight Black Ice Storm." Like CFC, Energizer primarily sells directly to retailers and distributors and not to consumers. In the six months that Energizer's allegedly infringing products were on the market, Energizer sold more than $1 million of product domestically.

Energizer's products compete directly with CFC's products in the U.S. automotive air freshener market and at many of the same retailers. CFC's products

with the "Black Ice" and "Bayside Breeze" scents were sold alongside Energizer's dual scent products with the words "Midnight Black Ice Storm" on the packaging and its single scent "Boardwalk Breeze" products in the same stores across the United States, including Target, Walmart, Pep Boys, Dollar General, AutoZone, and various supermarkets. Stores that carry both parties' products will often "block" the products by either brand or type of product; thus, each party's products will typically be surrounded by its own brand of product but might be next to other, similar products made by other companies. Both parties' products cost less than $4.00.

*The appearance of the products.* The packaging or the container of nearly all of CFC's products displays, at the top, the brand name "Little Trees" in white letters on a red stripe sloping slightly upwards. Products with the "Black Ice" scent display a small green pine tree and a small chunk of black ice with jagged edges. White letters cover most of the chunk, with the word "Black" on top in a small font and "Ice" below in a much larger font. The word "Black" is rendered in upper case. The word "Ice" is rendered with a dotted "i" in lower case but in a font size just barely smaller than the large upper case "CE" (Figures 1, 2).



Figure 1



Figure 2

7

The packaging or the container of the Energizer dual scent products display, at the top, the brand name "Refresh your car!" in light blue, dark blue, or black lettering against a background of a dark, threatening sky with streaks of lightning. The word "Refresh," with an upper case "R," appears above the words "your car!" and is in a font much larger than the words "your car!" with all other letters in lower case. A small white car appears before the word "your." The packaging or container also displays a black car with beaming headlights near the bottom.

Particularly relevant to this case is the display of the words "Midnight Black Ice Storm." On Energizer's dual-scented diffuser product, the words appear in two ways. They appear in sequence along the top curve of what appears to be a car's steering wheel; the words "Midnight Black" appear in white against a black background, and the words "Ice Storm" appear in black against a white background.[3] In addition, to the left of an automobile and in slightly smaller font, the word "Midnight" appears above the word "Black" in white against a black background, and, just below, the word "Ice" appears above the word "Storm" in black against a white background (Figure 3).

---

[3] According to Energizer's Chief Strategy Officer, Energizer has "sometimes" marketed its dual-scented products to retailers and distributors with a slash (virgule) between the words "Midnight Black" and the words "Ice Storm." Declaration of Michelle M. Atkinson. A-166, ¶ 31.



Figure 3

On Energizer's dual scent gel can, the words "Midnight Black" appears on one line above the word "Ice Storm," with all four words in black against a white background (Figures 4, 5).



Figure 4



Figure 5

CFC's products with the "Bayside Breeze" scent display those words in white block letters against a background of blue sky and sea with a sailboat (a sloop), the mainsail of which has three broad horizontal stripes; the top stripe is red, the middle stripe is teal, and the bottom stripe is dark blue (Figure 6).

10



Figure 6

Energizer's products with the "Boardwalk Breeze" scent display, in addition to the "Refresh your car!" brand name at the top, the words "Boardwalk Breeze" in white cursive letters against a background of blue sky and sea with a sailboat (a sloop), the mainsail of which has broad horizontal stripes; the top and bottom stripes are dark blue (Figure 7).



Figure 7

*Development of Energizer's scent names.* Before Energizer acquired Handstands in July 2016, a series of emails in April 2016 reflects the strategy of Handstands' product development team in naming new scents for its "Refresh Your Car!" brand. One employee asked for guidance on whether to use the words "Ice" or "Black" in the name. Handstands' then-CEO envisioned "a name like 'Midnight Black'" and wrote, "If we really wanted to have some fun" they "could also look at a dual [scent] with a Black Ice variant – along the lines of Midnight Black / Ice Storm." Another employee suggested that they should "get as close to the Black Ice name as we can,

without running into legal issues" as "[w]e want the customers to immediately make the connection." He advised that "[w]e do want to avoid the Car-Freshner/Exotica [infringement lawsuit] situation, obviously." A Handstands manager, explaining the idea behind the name "Boardwalk Breeze," wrote that the "intent has always been to draw close to the Bayside Breeze in fragrance and concept" while cautioning that "[o]bviously we don't want to tell our customers this."

*CFC's prior infringement claims.* This is not the first time CFC has sought to stop Energizer's acquired company, Handstands, from trademark infringement. In 2010, CFC requested Handstands to stop using the term "Car-Fresheners" because it was too similar to CFC's "Car-Freshner" marks; Handstands stopped. The next year, Handstands promoted a "Geico" air freshener by using a replica of CFC's green tree design, CFC sent Handstands a cease-and-desist letter, and Handstands agreed not to use the green tree design in the future in connection with air fresheners. In 2012, Handstands sold paper air fresheners using the slogan "Let It Hang," which was identical to one of CFC's marks. Handstands settled CFC's infringement lawsuit complaining of this practice. In 2013, Handstands again used

the words "Car Fresheners" in connection with air fresheners and stopped at CFC's request.

*Pending litigation*. CFC filed its Complaint in February 2017, alleging infringement and dilution of CFC's "Black Ice" mark. In April 2017, CFC filed its Amended Complaint, alleging infringement and dilution of both CFC's "Black Ice" and "Bayside Breeze" marks. After receiving this Amended Complaint, Energizer moved to phase out its dual-scented products with scents named "Midnight Black" and "Ice Storm" and the single-scented products with a scent named "Boardwalk Breeze," and stopped selling them as of June 30, 2017. Instead, Energizer began selling the same dual-scented product with the name of one of the two scents changed from "Midnight Black" to "Lightning Bolt" and the name of the other scent retained as "Ice Storm."

In August 2019, the District Court granted Energizer's motion for summary judgment. *See Car Freshner*, 419 F. Supp. 3d at 449. The Court ruled that CFC had not presented sufficient evidence for a reasonable juror to conclude that Energizer's marks were similar enough to CFC's marks to create a likelihood of confusion as to source or sponsorship of the products. The Court therefore rejected CFC's Lanham Act claim. *See id*. at 444. For similar reasons the Court rejected CFC's federal false

14

designation of origin and unfair competition claims, and state dilution and unfair competition claims. *See id*. at 449 n.15. The Court rejected CFC's federal dilution claim because its marks were not sufficiently famous. *See id*. at 448. We consider the details of the Court's decision in the course of explaining our decision.

Discussion

I. Trademark Infringement

On this appeal, the ultimate issue on CFC's trademark infringement claim is whether Energizer was entitled to summary judgment on CFC's claim that Energizer's use of the marks "Midnight Black Ice Storm" and "Boardwalk Breeze" "is likely to cause confusion," 15 U.S.C. § 1114(1)(a), as to the origin or sponsorship of its goods. *See Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). The likelihood of confusion is considered from the perspective of "ordinary consumers." *Id*.

We review a district court's grant of summary judgment *de novo*, "resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). In a trademark infringement case, we review *de novo* a ruling on whether the plaintiff

has shown a likelihood of confusion because we consider the issue to be a question of law.[4] *See id.* at 86.

In determining whether the requisite likelihood of confusion has been shown (or, more precisely, on review of the summary judgment ruling, whether a genuine issue exists as to such likelihood), we consider the eight factors identified by Judge Friendly in *Polaroid v. Polarad Electronics*, 287 F.2d 492, 495 (2d Cir. 1961): (i) the strength of the senior user's marks; (ii) the similarity of the parties' marks; (iii) the market proximity of their products;[5] (iv) the likelihood that the senior user will

---

[4] At an earlier time, we considered likelihood of confusion to be a question of fact. *See American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981). Now, however, we are one of three circuits, along with the Sixth and Federal Circuits, that consider likelihood of confusion to be a question of law. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:73 (5th ed. 2020). It is arguable that the Supreme Court's decision in *Hana Financial, Inc. v. Hana Bank*, 574 U.S. 418 (2015), casts doubt on our view. In *Hana*, the Court ruled that whether an original and a revised trademark are "legal equivalents" for purposes of establishing priority of a plaintiff's mark was a question of fact because the question was whether "they create the same, continuing commercial impression" viewed "from the perspective of an ordinary purchaser or consumer." *Id*. at 420. The Court added, "Application of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury." *Id*. at 422. Nevertheless, post-*Hana*, the Sixth Circuit has continued to adhere to the view that the "determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion," *Progressive Distribution Services, Inc. v. United Parcel Service, Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (internal quotation marks and citation omitted), and in light of our own recent decision in *Tiffany*, we do so here.

[5] *Polaroid* makes clear that "proximity" of the products is a variable, not a binary choice, *i.e.*, either close or not close. "If defendant's sole business were the manufacture and sale of microwave equipment, we should have little difficulty in approving the District Court's conclusion that there was no such likelihood of confusion" as to violate either the Lanham Act or state law . . . . "What gives us some pause is defendant's heavy involvement in a phase of electronics that lies *closer* to plaintiff's business, namely, television." 287 F.2d at 496. (emphasis added). "If defendant should move into new territory *more closely related* to optics and photography, different considerations as to . . . the merits will, of course, apply." *Id*. at 498 (emphasis added).

bridge any gap separating the parties' current markets; (v) the existence of actual consumer confusion; (vi) whether the junior user acted in bad faith in adopting its mark; (vii) the quality of the junior user's products; and (viii) the sophistication of the relevant consumer group.

Although identification of the *Polaroid* factors was dictum (the plaintiff was not entitled to an injunction because it had waited too long to sue), *see id*. at 496, these eight factors[6] are so ingrained in the trademark jurisprudence of this Court[7] and other courts[8] that we readily apply them on this appeal. In doing so, however, we note that the identification of the *Polaroid* factors provides no guidance on how they are to be weighed in the aggregate or whether any one or more of them are entitled to extra weight.[9]

---

[6] Judge Friendly's opinion explicitly noted that the identification of the eight factors "does not exhaust the possibilities—the court may have to take still other variables into account." *Polaroid*, 287 F.2d at 495. Indeed, just three years after *Polaroid*, Judge Friendly wrote for this Court that it should "add three other factors—the rather sterile nature of plaintiffs' three-year priority due to their exceedingly limited sales in this country, their long delay in asserting their claim, and the serious harm an injunction would cause the defendant as against the trifling benefit to the plaintiffs." *Chandon Champagne Corp. v. San Marino Wine Corp.*, 335 F.2d 531, 536 (2d Cir. 1964). Because these three factors are not implicated by the pending case, we need not consider them.

[7] *E.g.*, *Tiffany & Co.*, 971 F.3d at 84-85; *Guthrie*, 826 F.3d at 37; *International Information Systems Security Certification Consortium, Inc. v. Security University, LLC*, 823 F.3d 153, 160 (2d Cir. 2016).

[8] "Eventually all of the 13 federal circuits adopted a similar multi-factor analysis strongly influenced by the Second Circuit's *Polaroid* test." MCCARTHY, *supra* note 5, at § 24:57.

[9] In this respect, *Polaroid* is no different than some other multi-factor analyses. *See*, *e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (four statutory fair use factors, 17 U.S.C. § 107(1)-(4), to be "weighed together"); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (five factors to be considered in determining whether exercising personal jurisdiction over out-of-state defendant comported with due process).

With respect to our standard of review concerning a district court's ruling on the *Polaroid* factors in the aggregate, "[O]ur past cases have always recognized that the 'district court's balancing of the *Polaroid* factors is subject to *de novo* review.'" *Tiffany*, 971 F.3d at 85 (quoting *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 162 (2d Cir. 2004)); *see also, e.g., Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir. 1995) ("[W]e review the court's weighing of [the *Polaroid*] factors and its ultimate conclusion under a *de novo* standard."). And this standard of review applies "in the majority of cases" to "a district court's determinations as to each *Polaroid* factor." *Tiffany*, 971 F.3d at 86.[10]

"Insofar as the determination of whether one of the *Polaroid* factors favors one party or another involves a legal judgment—which it often does—we must review that determination *de novo*." *Tiffany*, 971 F.3d at 86 (footnote omitted); *see id*. n. 7 ("For example, there is a considerable component of law in the determination whether a mark has the degree of strength necessary to weigh in favor of the party

---

[10] We acknowledge that, on review of findings following a bench trial, we have said, "We review the district court's treatment of each Polaroid factor under a clearly erroneous standard." *Arrow Fastener*, 59 F.3d at 391.

claiming infringement.") (internal quotation marks and citation omitted).[11] We reiterate that our concern here is whether a grant of summary judgment was proper.

With respect to each *Polaroid* factor, we next set out the District Court's rulings, and then our own assessment of the factor, treating CFC's marks separately where appropriate.[12] We start with the strength of the marks.

The District Court ruled that CFC's "Black Ice" mark had "moderate" strength. *Car Freshner*, 419 F. Supp. 3d at 424.

We begin our assessment by noting that the strength factor is analyzed based on two components: "(1) the degree to which [the mark] is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace." *W.W.W.*

---

[11] In *Tiffany*, we noted that "some of [our prior] cases have purported to afford 'considerable deference,'" 971 F.3d at 85 (quoting *Playtex Products*, 390 F.3d at 162), "even to [a district court's] 'finding on each factor' generally," *id*. (quoting *Natural Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005)). Significantly, however, *Tiffany* cautioned that "[t]hese cases should not be read to suggest that 'a district court deciding a motion for summary judgment in a trademark infringement case has . . . greater discretion than it would have in a non-trademark case to resolve disputed issues of fact or draw inferences against the non-moving party." *Id*. (internal quotation marks omitted). Indeed, in the summary judgment context, if a genuine dispute existed as to a material fact, the case would normally not be appropriate for summary judgment. *See Lois Sportswear, U.S.A. v. Levi Straus & Co.*, 799 F.2d 867, 879 (2d Cir. 1986) (Miner, J., dissenting). More recently, we made the same point in *Kelly-Brown v. Winfrey*, 659 F. App'x 55 (2d Cir. 2016). "[I]t is not obvious what it even means to defer to a factual finding at summary judgment, given that, technically, there generally are none." *Id*. at 58, n.3.

We note that *Lois Sportswear*, the original source of the "considerable deference" phrase, gave no indication where the phrase came from. The Court's opinion provided a "*Cf.*" citation to *Anderson v. City of Bessemer*, 105 S. Ct. 1504, 1512 (1985), with a parenthetical that merely stated the basic proposition that findings of fact may not be reversed unless clearly erroneous. *Lois Sportswear*, 799 F.2d at 873. It is not even clear what the phrase means. Where a factual determination is reviewed on appeal, for example, after a bench trial, there is no intermediate standard of review between "clearly erroneous" and *de novo*.

[12] The "Black Ice" scent has been on the market since 2004; as a registered and (unlike "Bayside Breeze") incontestable trademark, *see* 15 U.S.C. § 1065, "Black Ice" is entitled to "significant protection," s*ee Lois Sportswear*, 799 F.2d at 871.

*Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir. 1993). Inherent distinctiveness is assessed on a continuum from least to most distinctive, with the aid of categories usually called (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful, with marks in the last category considered the strongest. *See Playtex Products*, 390 F.3d at 163. Acquired distinctiveness, sometimes called secondary meaning, is determined by analyzing six factors: advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987).[13]

We consider "Black Ice" inherently distinctive. As applied to automotive air fresheners, inclusion of the word "ice" could be thought to suggest a product that has the ability to provide cooling refreshment, but the total phrase "Black Ice," as applied to an automotive air freshener, is close to, if not actually, arbitrary.[14]

With respect to acquired distinctiveness, sales of "Black Ice" products totaled

---

[13] That one of the eight factors in the *Polaroid* analysis is itself to be determined with reference to six factors does not augur well for predictability in this field of law. However, a second comer to a market, considering a name for its product, can always avoid the risk of infringement by selecting a name with no similarity to the name of a competitive product.

[14] The words "black ice" generally describe a transparent coating of ice on a road or paved surface that is hazardous because it cannot easily be seen. *See Black Ice*, *The New Oxford American Dictionary* (1st ed. 2001).

in the tens of millions of dollars between 2013 and 2018. CFC's 3-pack of Black Ice hanging trees was the number one selling automotive air freshener product for several years between 2015 and 2017. The record contains considerable evidence of widespread recognition of the "Black Ice" mark (in its paper hanging tree form) in unsolicited news and social media coverage and in popular culture.[15] Somewhat diminishing strength is the fact that the words "black" and "ice" appear in the marks on other air fresheners (although not automotive air fresheners), and when there is "extensive third party use of the words [that comprise the mark]," a mark is less likely to be characterized as strong. *W.W.W. Pharmaceutical*, 984 F.2d at 573; *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).

We consider "Black Ice," as applied to automotive air fresheners, to be strong, much farther along the continuum of strength than the District Court's description as only "moderate."

As to "Bayside Breeze," the District Court considered it to be "weaker in terms of its strength than the 'Black Ice'" mark. *Car Freshner*, 419 F. Supp. 3d at 425.

In our view, "Bayside Breeze" is arguably suggestive of the freshening effect

---

[15] Although the District Court observed that "the evidence does not indicate how the scents—as opposed to the general packaging and brand identity of the products—connected consumers to Little Trees as the source of the products," *Car Freshner*, 419 F. Supp. 3d at 424–25, we are satisfied that a reasonable juror could interpret the record evidence as a whole to indicate widespread recognition of the Black Ice scent name.

of a breeze, from which it gains some strength as applied to automotive air freshener products. However, the record discloses that the word "Breeze" appears in the names of several of Energizer's air freshener scents, such as "Cool Breeze," "Summer Breeze," "Laguna Breeze," "Tropical Breeze," and "Aruba Blue Breeze" and also appears in thirty third-party registrations, including "Beach Breeze," "Coastal Breeze," and "Pure Ocean Breeze," and in the names of forty-seven other products in use, including "Ocean Breeze," "Coastal Breeze," "Sea Breeze," and "Beach Breeze," many of which, like CFC's "Bayside Breeze," evoke seaside settings. When the word that makes a mark somewhat suggestive is widely used in competitive, nearly competitive, and other products, its suggestive quality substantially loses what that quality would otherwise contribute to the strength of a trademark. Unlike "Black Ice," which remains nearly arbitrary as a phrase despite the appearance of its component words in other products, "Bayside Breeze" does not acquire strength from the somewhat suggestive word "breeze," which is widely used in competitive and other products.[16]

Furthermore, in contrast to "Black Ice," the record lacks evidence that "Bayside Breeze" has prompted unsolicited news and consumer social media

___

[16] Net sales of "Bayside Breeze" products between 2013 and 2018 were a small fraction of the sales of "Black Ice."

coverage.

We agree with the District Court that "Bayside Breeze" lacks the strength of the "Black Ice" mark.

With respect to similarity, the District Court considered both of CFC's marks to be dissimilar from both of Energizer's marks, and concluded that "[t]he Court could on this basis alone determine that summary judgment on the infringement claim is appropriate for the Defendants." *Id.* at 441. Although acknowledging the identity of some of the words in the parties' marks, the Court concluded that the differences in packaging, especially the prominence of the parties' brand names, "establish, as a matter of law, that no likelihood of confusion as to the source of the goods exists in this case." *Id.* at 440.

Our consideration of similarity begins with the words of the marks. Both words of CFC's two-word mark "Black Ice" appear sequentially in the middle of Energizer's four-word mark "Midnight Black Ice Storm." Energizer places the first two words of its mark above the last two on some products, but places them in sequence on one line on others, such as the one shown in figure 3, *supra*. As noted earlier, the phrase "black ice" is well known as indicating a section of road on which rainwater has frozen, posing an unseen hazard to motorists. *See supra* n.14. This

enhances the likelihood that a consumer's eye will easily move from "Black" to "Ice" even when Energizer's four-word mark is displayed on two lines.

It is extremely unusual for the mark of a junior user to include two identical words of a senior user's mark in sequence.[17] One litigated example is *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955 (2d Cir. 1996). The plaintiff's mark was "The Sports Authority"; the defendant's mark was "Sports Authority Food, Spirits & Sports," *id*. at 959, but the evidence revealed that the defendant often used its mark with only the words "Sports Authority," *id*. at 962. The parties were not competitors in the same market. The plaintiff was a sporting goods and apparel retailer, *see id*. at 959; the defendant, an owner and operator of hotels, ran sports-related restaurants, *see id*. Despite the difference in businesses, we ruled that a reasonable trier of fact could conclude that the defendant's use of the words "sports authority" and "the sports authority" was "similar" to the use of the plaintiff's mark. *Id.* at 962. Weighing all the *Polaroid* factors, we reversed a grant of summary judgment for the defendant on the plaintiff's Lanham Act claim. *See id*. at 965.

---

[17] Use of one word, even from a senior user's arbitrary mark, whether singular or plural, is not so unusual, and does not inevitably lead to an infringement claimant's victory, even when the products compete in similar markets. *See, e.g.*, *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 48, 49 (2d Cir. 1978) ("Mushroom" and "Mushrooms"); *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 610 (2d Cir. 1960) ("Haymaker" and "Haymakers"); *see also Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 169 (2d Cir. 2016) (remanding for further consideration of infringement claim with respect to two marks with the word "collective.").

Energizer contends on appeal that the packaging of its and CFC's products "is completely dissimilar, which alone is dispositive." Br. for Appellees at 16. Although "[i]n assessing similarity, courts look to the overall impression created by the [marks] and the context in which they are found," *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993), we have found no decision where differences in packaging dispelled the similarity of a mark that used two identical words, neither of which is descriptive of the products on which they appear, and the defendant put them, in sequence, in a mark placed on competitive products.[18] We see no reason to encourage such a practice. Besides, where, as here, a mark is strong, a consumer might well think that the manufacturer has decided to

---

[18] In *American International*, the same two words appeared, adjacent to each other, in the service marks of the parties. The plaintiff was an insurance company; the defendant was a "holding company . . . providing international marketing and distribution services through one group of subsidiaries and financing for purchasers of raw materials and manufactured goods in international trade through another group." 664 F.2d at 349. The plaintiff alleged that the services provided by it and the defendant were "both overlapping and complementary to a very substantial extent." *Id*. at 350. We reversed a grant of summary judgment for the defendant on its Lanham Act claim and remanded for trial. *Id*. at 353.

In *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133 (2d Cir. 1999), the plaintiff's and the defendant's marks shared the words "Morningside" and "Group," although the words were not adjacent in the defendant's mark. *Id.* at 140. The parties were "in competition," although they "focused their investment efforts on somewhat different industries." *Id.* at 140. We reversed a judgment for the defendant after a bench trial and ruled that the plaintiff was entitled to an injunction on its Lanham Act claim. *See id*. at 143.

In *In re Paper Doll Promotions, Inc.*, 84 U.S.P.Q. 2d 1660 (T.T.A.B. 2007), "Paper Doll Promotions" for costumes was found likely to cause confusion with "Paper Doll" for clothing. *See id*. at *10.  In *Motion Picture Association of America, Inc. v. Respect Sportswear, Inc.*, 83 U.S.P.Q.2d 1555 (T.T.A.B. 2007), "Rated R Sportswear" for clothing was found likely to cause confusion with the famous motion picture rating. *See id*. at *7.

In *In re Merchandising Motivation, Inc.*, 184 U.S.P.Q. 364 (T.T.A.B. 1974), "Menswear" was found not confusingly similar to "Men's Wear" because "Men's Wear" was descriptive. *See id.* at *2.

market its trademarked product under a new brand name along with that mark. Despite the differences in aspects of the packaging, the similarity factor weighs significantly in favor of CFC with respect to its "Black Ice" mark.

As for CFC's "Bayside Breeze" mark, only the one word "Breeze" appears in Energizer's mark. In contrast to the use of two words from CFC's mark in Energizer's mark in sequence, as was the case with "Midnight Black Ice Storm," the use of a single word from a suggestive mark, coupled with differences in the appearance of the packaging, tends to weigh the similarity factor in favor of Energizer with respect to CFC's "Bayside Breeze" mark.

In one respect, however, the packaging of the "Boardwalk Breeze" products displays similarities to the packaging of the "Bayside Breeze" products that are of concern. Both show a sailboat, the boats are the same type (sloops), and the mainsails both have a broad dark blue stripe at the bottom. Although Energizer's decision to replicate CFC's sailboat and some of the mainsail coloring is eyebrow-raising, these images are not uncommon for products with the word "breeze" in their marks. Furthermore, the significant differences in packaging of the "Bayside Breeze" and "Boardwalk Breeze" products, particularly the prominent display of

26

the parties' brand names "Little Trees" and "Refresh your car!," largely dispel the slight similarity arising from the common use of the word "breeze" and the sailboat.

We weigh this factor moderately in favor of Energizer.

As to proximity, the District Court acknowledged that both sets of products directly compete with each other, *see Car Freshner*, 419 F. Supp. 3d at 441. Indeed, they are often displayed side-by-side on retailers' shelves. We agree that this factor favors CFC.

The District Court considered the bridging-the-gap factor irrelevant, *see id.*, which it clearly is, in view of the fact that the parties' products are already in the same market.

The District Court ruled that there was no triable issue of fact concerning actual confusion as to either mark. *See id.* at 442. As the Court noted, CFC could find only one customer even arguably confused, as evidenced by an inquiry posted on Amazon.com. *See id.* CFC produced no survey evidence. We agree with the District Court that the actual confusion factor favors Energizer. We note, however, that, although evidence of actual confusion is very helpful to an infringement claimant, its absence is not fatal. *See, e.g.*, *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78 (2d

Cir. 1988) (drawing no negative inference from absence of actual confusion as to product on market for short time).

As to bad faith, the District Court concluded that this factor "supports" CFC's claim because the internal emails written by staff members of Handstands could reasonably be found to show efforts to "use names that at least echoed" those of CFC's scents and show that the Defendants acted in bad faith. *Car Freshner*, 419 F. Supp. 3d at 443.

We hear a good bit more than an echo. The emails from the Handstands employees as they choose names for their new products are highly probative of their intent to mislead consumers—which, in turn, is probative of whether such efforts would succeed. Handstands' employees, instructed that the new "Refresh" fragrances would include "a Black Ice variant," decided to "have some fun" and "get as close to the Black Ice name as we can." Moreover, from such a name, they "want[ed] the customers to immediately make the connection." Connection to what? A reasonable inference is a connection to the manufacturer of "Black Ice," a top-selling automotive fragrance. So they decided to precede the words "Black Ice" in CFC's mark with the word "Midnight," an adjective that could readily be understood as intensifying the "Black" that it modified. (These employees spoke of

28

"the 'blackness' [being] more important than the 'ice' piece to the name.") Then, they decided to take the word "Storm" from their existing scent "Ice Storm" and have it follow CFC's words "Black Ice" and voilà: "Midnight Black Ice Storm," which was, as they said, "as close to the Black Ice name as we can [get]."

With respect to selecting the name "Boardwalk Breeze," a Handstands manager wrote that the "intent has always been to draw close to [CFC's] Bayside Breeze in fragrance and concept" while cautioning that "[o]bviously we don't want to tell our customers this." Why not tell the customers? A reasonable inference is that Handstands wanted customers to mistake the "Boardwalk Breeze" mark for the high-performing "Bayside Breeze" mark.

Rarely does an infringement case reveal such explicit evidence of bad faith. In such circumstances, some might expect a court to accord that factor such significance as alone to require an adverse outcome for the alleged infringer. To do that, however, would be to punish the Defendants for bad faith, rather than to consider bad faith in an overall balance of factors. Bad faith and intent to deceive are relevant to the extent that they add to the likelihood that the accused infringer will achieve its objective of consumer confusion, but they do not alone determine likelihood of confusion nor provide an occasion for imposing punishment.

Nonetheless, in light of compelling evidence that Handstands sought to approximate CFC's marks in order to gain a competitive advantage through consumer confusion, this factor weighs heavily in favor of CFC.

With respect to the quality of the Defendants' products, the District Court noted that there was not even an allegation that their products were "of a significantly lower quality" than those of CFC. *See id.* at 444. We agree with the Court's conclusion that "the evidence does not support a finding that the relative quality of the products plays a significant role in the existence of a likelihood of confusion." *Id*.

As to sophistication of the relevant consumer group, the District Court noted that the products are priced relatively modestly, are not complicated to use, and are sold in general merchandise stores. *See id*. at 444. The Court concluded that these circumstances made confusion "more likely," because "consumers are unlikely to spend a great deal of time on their buying decisions." *Id*. To whatever slight extent this factor tips the overall balance toward CFC, we agree.

On the ultimate question of whether Energizer was entitled to a grant of summary judgment, the District Court concluded, primarily because of its view that there was no similarity of marks, that "the evidence is insufficient for a reasonable

juror to conclude that the products in question are sufficiently similar to create a likelihood of confusion as to the source of the goods." *Id*.

Examining all of the *Polaroid* factors for CFC's "Black Ice" mark, we disagree. As explained above, our conclusions with respect to each factor were as follows: (1) the "Black Ice" mark has considerable strength, which weighs in favor of CFC; (2) Energizer's mark is significantly similar to CFC's mark because it uses the same two nondescriptive words, in sequence or on adjacent lines, where the words, by forming a well known phrase, are readily read together, which also weighs in favor of CFC; (3) Energizer's products compete directly with CFC's products, which weighs in favor of CFC; (4) the competitive nature of the products indicates there is no gap to be bridged, which favors neither party; (5) CFC did not demonstrate consumer confusion, which may favor Energizer; (6) Energizer's bad faith, attributed to it from the undisputed evidence of employees of Handstands, the company it acquired, is substantial, which strongly favors CFC; (7) the products are similar in quality, which favors neither party; and (8) the modest sophistication of the relevant consumer group barely favors CFC. The balance of all the *Polaroid* factors favors CFC at least sufficiently to preclude summary judgment for Energizer

as to infringement of the "Black Ice" mark.[19] Energizer has failed to establish as a matter of law that there is no likelihood of confusion between the "Black Ice" and "Midnight Black Ice Storm" marks.

With respect to infringement of CFC's "Bayside Breeze" mark, we agree with the District Court's determinations concerning strength, proximity, bridging the gap, lack of actual confusion, quality of Energizer's products, and consumer sophistication, but we reach different conclusions from those of the District Court as to two of the *Polaroid* factors. As explained above, we consider the similarity factor to favor Energizer only moderately (rather than decisively), and the bad faith factor to favor CFC heavily (rather than merely to "support[]" CFC's claim).

With some factors favoring each side, we encounter a question as to which *Polaroid* provides no guidance: how are conclusions as to the eight factors to be considered in the aggregate when some favor each party?[20] No formula is available. Just as the party with the greater number of factors in its favor does not necessarily

---

[19] In reaching this conclusion, it makes no difference whether we review the District Court's assessment of likelihood of confusion for clear error or *de novo*. Even if we used the "clear error" standard, we have a "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

[20] Our case law contains various statements on this question that cannot be easily harmonized. For example, we have said that "No single *Polaroid* factor is preeminent," *Lever Brothers Co. v. American Bakeries Co.*, 693 F.2d 251, 253 (2d Cir. 1982), and that the first three *Polaroid* factors are "*perhaps* the most significant in determining the likelihood of confusion." *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) (emphasis added).

prevail for that reason, *see Playtex Products*, 390 F. 3d at 162, an attempt to aggregate the degrees by which the factors favor one side and see if that aggregate exceeds the total for the other side is too mechanical, even if such a finely calibrated task could be accomplished with assurance of reliability. Ultimately, as with most close questions of law, judgment must be exercised to apply the legal standard of likelihood of consumer confusion.

Considering all eight factors, we conclude that the undisputed evidence warrants entry of summary judgment in favor of Energizer with respect to the Lanham Act claim of infringement of CFC's "Bayside Breeze" mark.

II. Dilution

Turning to CFC's federal trademark dilution claims, the District Court granted summary judgment to Energizer with respect to both the "Black Ice" and "Bayside Breeze" marks. We affirm substantially for the reasons stated by the District Court in its opinion, *i.e.*, that "no evidence supports a finding that either of the marks in question are famous," as required to claim dilution. *Car Freshner*, 419 F. Supp. 3d at 448.

## III. State Law Claims

Our disposition of CFC's state law claims largely tracks our disposition of the federal trademark infringement claims. As the District Court correctly observed, CFC's state law unfair competition claim turned on a likelihood of consumer confusion. *See Car Freshner*, 419 F. Supp. 3d at 449 (citing *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 664 (2d Cir. 1979)); *accord Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543 (1977) ("An action for infringement as well as an action for unfair competition both require a showing that the public is likely to confuse the defendant's product or service with that of the plaintiff."). Finding no likelihood of consumer confusion as to either of CFC's marks, it granted summary judgment to Energizer on this claim. For the reasons already stated, we agree that CFC failed to defeat Energizer's claim that no genuine issue of material fact existed as to the likelihood of consumers confusing "Bayside Breeze" and "Boardwalk Breeze." And, therefore, we affirm the grant of summary judgment as to the "Bayside Breeze" mark. Nevertheless, because Energizer has failed to establish as a matter of law that there is no likelihood of confusion between the "Black Ice" and "Midnight Black Ice Storm" marks, we reverse the grant of

summary judgment to Energizer on CFC's unfair competition claim as to the "Black Ice" mark.

With respect to CFC's state law trademark dilution claims, the District Court correctly stated that "the marks must be 'very' or 'substantially' similar" to support a finding of trademark dilution under New York law. *Car Freshner*, 419 F. Supp. 3d at 448-49 (quoting *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1029 (2d Cir. 1989); *accord Playtex Products, Inc.*, 390 F.3d at 167. Finding that differences in the products' packaging, along with "the prominent use of house brand names," established dissimilarity as a matter of law, the District Court granted summary judgment to Energizer on both dilution claims. *Car Freshner*, 419 F. Supp. 3d at 440, 449. Because we conclude that the "Bayside Breeze" and "Boardwalk Breeze" marks are only moderately similar, we affirm the grant as to the "Bayside Breeze" mark. However, because "Black Ice" and "Midnight Black Ice Storm" possess a high degree of similarity, we reverse the grant of summary judgment as to the state law dilution claim respecting the "Black Ice" mark.

## Conclusion

Accordingly, we: (1) REVERSE the grant of summary judgment for Energizer on CFC's federal trademark infringement claim with respect to its "Black Ice" mark, (2) AFFIRM the grant of summary judgment for Energizer on CFC's federal trademark infringement claim with respect to the "Bayside Breeze" mark, (3) AFFIRM the grant of summary judgment for Energizer on CFC's federal trademark dilution claim with respect to both marks, (4) REVERSE the grant of summary judgment for Energizer on CFC's state law claims with respect to the "Black Ice" mark, and (5) AFFIRM the grant of summary judgment for Energizer on CFC's state law claims with respect to the "Bayside Breeze" mark. We REMAND the case to the District Court for further proceedings consistent with this opinion.