23-7540-cv
*The Wonderful Company LLC v. Nut Cravings Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of January, two thousand twenty-five.

Present:     GERARD E. LYNCH,
             WILLIAM J. NARDINI,
             EUNICE C. LEE,
                  *Circuit Judges*,

---

THE WONDERFUL COMPANY LLC, a Delaware
limited liability company, CAL PURE PRODUCE
INC., a California Nonprofit Cooperative
Association,
             *Plaintiffs-Appellants*,

         v.                                                23-7540-cv

NUT CRAVINGS INC.,
A New York corporation,
             *Defendant-Appellee*,

Does 1 through 10,
             *Defendant.*

---

| | |
|---|---|
| *For Plaintiffs-Appellants*: | DANIEL WOOFTER, Goldstein, Russell & Woofter LLC, Washington, DC. |
| *For Defendant-Appellee*: | SANDRA A. HUDAK (Mark Berkowitz, *on the brief*), Tarter Krinsky & Drogin LLP, New York, NY. |

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Mary Kay Vyskocil, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the matter is **REMANDED** for further proceedings.

Plaintiffs-Appellants The Wonderful Company LLC and Cal Pure Produce Inc. (together, "TWC") appeal from a judgment entered on September 26, 2023, in the United States District Court for the Southern District of New York (Mary Kay Vyskocil, *District Judge*), dismissing the Second Amended Complaint ("Complaint"), which alleged claims of trade dress infringement against Defendant-Appellee Nut Cravings Inc. ("Nut Cravings"). TWC brought these actions under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for infringement of its registered trade dress, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for infringement of its unregistered trade dress. The district court dismissed the Complaint on two bases that are relevant here. First, it concluded that TWC failed to plausibly allege a likelihood of confusion between its protected trade dress in pistachio packaging, and the packaging in which Nut Cravings sells its pistachios, as required to survive dismissal of a claim for trade dress infringement under either Section 32 or Section 43(a). Second, as an alternative reason for dismissing the Section 43(a) claim, the district court held that TWC failed to adequately allege that its unregistered trade dress was nonfunctional, and therefore protectable under the Lanham Act. TWC challenges both rulings on appeal. We agree with TWC and therefore vacate the district court's judgment of dismissal. We assume the parties' familiarity with the case.

2

"Because the court dismissed the Complaint under Federal Rule of Civil Procedure 12(b)(6), our review is *de novo*, accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiffs' favor." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 103 (2d Cir. 2019).[1]   In general, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Lanham Act protects against infringement of a product's trade dress, which "encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001).   To state a claim of trade dress infringement, a plaintiff must precisely articulate "the character and scope of the claimed trade dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116-18 (2d Cir. 2001).   A trade-dress holder must allege (1) that its trade dress is distinctive, either inherently or by having acquired secondary meaning in the public mind, in the sense of identifying the product's source, *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012) (discussing what makes a trademark distinctive), and (2) that the alleged infringer's trade dress "is likely to confuse consumers as to its source or sponsorship," *Nora Beverages, Inc.*, 269 F.3d at 119.   Further, "trade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).   A product feature is functional if it is "essential to the use or purpose of the article or if it affects the cost or

---

[1]   Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

quality of the article." *Id.* at 32. As discussed further below, depending on whether the claim involves registered or unregistered trade dress, the burden of proving or disproving functionality falls on either the alleged infringer or owner of the trade dress.

## I.  Likelihood of Confusion

TWC first challenges the district court's determination that the Complaint "does not adequately allege a likelihood of consumer confusion." App'x 94. As noted earlier, we review a district court's grant of a motion to dismiss *de novo*; and regardless of the procedural posture, the ultimate question of whether a plaintiff has shown a likelihood of confusion is a question of law that itself must be reviewed *de novo*. *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 326 (2d Cir. 2020) (applying *de novo* review to district court's grant of summary judgment, based on determination of whether trademark-infringement plaintiff demonstrated likelihood of confusion). We hold that the district court erred when it concluded that the Complaint failed to adequately allege a likelihood of confusion.

To determine whether a claimed infringement is likely to confuse consumers with respect to the true source of a protected mark or trade dress, courts in this Circuit have long considered the factors articulated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961). The *Polaroid* test instructs courts to examine eight factors: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Starbucks Corp. v. Wolfe's Borough Coffee,*

4

*Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). The "evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000). And, "insofar as the determination of whether one of the *Polaroid* factors favors one party or another involves a legal judgment—which it often does—[the Court] must review that determination *de novo*." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 86 (2d Cir. 2020).

Of the eight *Polaroid* factors, only six are in dispute. Like Nut Cravings, we assume that TWC has adequately alleged the strength of its WONDERFUL® mark (factor one) and the lack of consumer sophistication (factor eight) in the market for snack nuts.[2] We thus assess the remaining six factors in light of the facts alleged in the Complaint.

Turning to the second *Polaroid* factor, after reviewing the submitted trade dresses of TWC- and Nut Cravings-branded pistachio products, this Court concludes that, for purposes of Rule 12(b)(6), the Complaint plausibly alleges similarity of the marks. Even though a visual, point-by-point comparison of the trade dress is relevant to our analysis, "in a trade dress infringement case the question is not how many points of similarity exist between the two packages but rather whether the two trade dresses create the same general overall impression." *Bristol-Meyers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992). TWC contends that Nut Cravings's product packaging unfairly mimics TWC's trade dress by using a similar black and green color scheme, along with the words "ROASTED SALTED PISTACHIOS" in all capital letters and a sans serif typeface. *See* App'x 11. Nut Cravings counters that simply viewing the

---

[2] We acknowledge that in making this assumption in its brief, Nut Cravings preserved its right to challenge the strength of TWC's unregistered and registered trade dress.

color scheme and typefaces of the trade dresses is insufficient to establish a likelihood of confusion, and that its own trade dress does not share other features with TWC's trade dress, including: the minimalist "WONDERFUL" trademark in white placed at the center of the package, two semi-circular windows splayed on either side of the package depicting pistachio nuts, the singular word "PISTACHIOS" written in all caps, in a sans serif typeface, positioned vertically and in green across the package between the semi-circular windows, and one simple descriptor of the product flavor as "Roasted & Salted" stamped along the top left of the package. *See id.* But "[w]hile a side by side comparison of the trademarks . . . would enable an attentive observer to differentiate them, this is not the test to be applied. It is the general overall impression which counts" in determining whether the marks are alike. *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 762 (2d Cir. 1960). Here, considering the likeness of core product-packaging features in both trade dresses, including the prominence of the color scheme and typeface of the primary identifying words for the product, it is at least plausible that a casual consumer could infer a similarity of the marks. The Court therefore concludes that this *Polaroid* factor weighs somewhat in TWC's favor.

As to competitive proximity (factor three), we disagree with the district court's conclusion that this factor favors Nut Cravings. The proximity inquiry asks to what extent the two products at issue compete. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996). The inquiry comprises two elements, market proximity and geographic proximity. *See Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004). "Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products. Both elements seek to determine

6

whether the two products have an overlapping client base that creates a potential for confusion." *Id.* In the present case, TWC alleges that it sells its pistachio products both online, including Amazon.com, and at brick-and-mortar retailers nationwide. By contrast, the Complaint alleges that Nut Cravings sells its products nationwide through exclusively online channels; however, critically one such online channel is Amazon.com. Hence, both sets of products are sold online on at least one of the same third-party websites. Both product lines target and are sold to consumers in the market for snack nuts, who are likely to visit third-party websites like Amazon.com to purchase either product. These considerations evince competitive proximity between TWC and Nut Cravings products, even if most of these products are not sold side by side in the same brick-and-mortar stores. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 218 (2d Cir. 2003) (finding competitive proximity, despite the fact products were sold in separate stores, because products appealed to the same consumers and were sold in geographical proximity). Thus, we find that this factor, as alleged in the Complaint, favors TWC.

The Court agrees with the district court that the likelihood of bridging the gap (factor four) is not applicable here. That factor "examines whether the prior user may wish to enter the defendant's market in the future." *Paddington Corp. v. Attiki Imp. & Distrib., Inc.*, 996 F.2d 577, 586 (2d Cir. 1993). Because the two products at issue already operate in the same nationwide market for pistachio nuts, this *Polaroid* factor is not relevant to this analysis. *Id.*

Next, although a finding of trademark infringement does not require a demonstration of actual confusion (factor five), "there can be no more positive proof of likelihood of confusion than evidence of actual confusion." *Bulman v. 2BKCO, Inc.*, 882 F. Supp. 2d 551, 562 (S.D.N.Y. 2012). TWC does not dispute that it alleges no evidence of actual confusion in the

7

Complaint. That said, the mere absence of allegations of actual confusion at the motion-to-dismiss stage does not suggest the Court must necessarily view this factor in Nut Cravings's favor. As we are bound to make all reasonable inferences in TWC's favor, we assess this factor as neutral.

The district court concluded that it could make no inference that Nut Cravings acted with bad faith (factor six), and we agree that TWC has not offered any nonconclusory allegations that Nut Cravings "adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991). As relevant here, "[p]rior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 397 (2d Cir. 1995). TWC contends that the strength of its trademark, coupled with Nut Cravings's asserted prior knowledge of TWC's trade dress, supports the inference that Nut Cravings's challenged trade dress was made in bad faith to "exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Tiffany & Co.*, 971 F.3d at 88. But without any facts alleging how and in what ways Nut Cravings sought to directly imitate TWC's trade dress to generate consumer confusion, TWC's allegations on this factor do not rise beyond the conclusory sort. For that reason, we assess this factor as neutral.

Finally, as to the quality of the Nut Cravings product (factor seven), TWC does not offer allegations regarding the quality of Nut Cravings products. In the absence of such allegations, this factor is also neutral because there are no alleged facts suggesting that its purported trade dress infringement diluted or tarnished TWC's mark by potentially causing consumers to question the quality of TWC's pistachio products. *See Sly Magazine, LLC v. Weider Publications L.L.C.*, 346

Fed. Appx. 721, 723 (2d Cir. 2009) ("The court properly found that there was no allegation or evidence that the Defendants' magazine is of inferior quality. Because there was no difference in quality of product . . . this factor should be considered neutral.").

In determining whether these two product trade dresses are confusingly similar, the Court "look[s] at the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember." *Lang*, 949 F.2d at 581. The *Polaroid* factors discussed here either favor TWC or remain neutral. That said, the Court is not fixated on the mere enumeration of factors weighing in either party's favor, but "on the ultimate question of whether consumers are likely to be confused" by the trade dresses at issue. *Paddington*, 996 F.2d at 584. On this decisive point, we conclude that the Complaint alleges enough of an overlap between the trade dresses in both appearance and product market to plausibly allege, for purposes of Federal Rule of Civil Procedure 12(b)(6), that consumers viewing either a TWC or Nut Cravings product package could be confused as to their true source.

## II. Functionality

We now turn to the district court's alternative basis for dismissing TWC's Section 43(a) claim: that the Complaint did not adequately allege that TWC's unregistered trade dress was nonfunctional and therefore protected under the Lanham Act. TWC faults this ruling in two respects.

First, TWC argues that the district court erred in failing to accord a presumption of nonfunctionality to its unregistered trade dress. Congress has provided that "the person who asserts trade dress protection [under Section 43(a)] has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3); *see TrafFix Devices, Inc.*, 532 U.S. at

9

30 (noting "the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection"). Under that rule, TWC would bear the burden of pleading nonfunctionality to support its Section 43(a) claim. But when a party *registers* its trade dress, that registration is entitled to a presumption of validity (which implicitly includes a presumption of nonfunctionality), *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 209 (2000) (citing Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), which provides for the presumptive validity of registered trade dress); and thus in an action under 15 U.S.C. § 1114 for infringement of a registered mark, it is the infringer who bears the burden of establishing as an affirmative defense "[t]hat the mark is functional." 15 U.S.C. § 1115(b)(8). TWC contends that its registered trade dress is coextensive with its unregistered trade dress, and so the presumption of nonfunctionality carries over from the former to the latter; and this presumption, it argues, relieves it of any further burden to plead the nonfunctionality of its unregistered trade dress in its Section 43(a) claim. We need not address the question of whether the presumption of nonfunctionality that comes with a registered mark can satisfy a party's burden to plead nonfunctionality in a Section 43(a) case for infringement of an unregistered mark; nor do we resolve the parties' dispute about whether TWC has adequately alleged that its registered and unregistered marks are indeed the same. That is because we agree with TWC's second argument, that in any event it adequately alleged the nonfunctionality of its unregistered trade dress.

In its ruling dismissing the Complaint, the district court held (1) that TWC's "allegations regarding nonfunctionality are threadbare recitations of the applicable legal standard," and (2) that even considering the "surrounding allegations" in the Complaint, TWC did not meet its pleading burden. App'x 95. Although we agree with the district court that TWC's allegations regarding

nonfunctionality are far from robust, we conclude that taking all of the allegations in the Complaint as a whole, including the detailed description of TWC's unregistered trade dress in its packaging, dismissal was inappropriate here. Because "[t]rade dresses often utilize commonly used lettering styles, geometric shapes, or colors, or incorporate descriptive elements" to create a unique product package, a reviewing court must assess "the combination of elements and the total impression that the dress gives to the observer." *Paddington*, 996 F.2d at 584. TWC alleges that its unregistered "WONDERFUL® Packaging" is nonfunctional and therefore protectable. App'x 20 ¶ 43. TWC describes in detail the facially aesthetic elements of its product packaging which, through TWC's "combination and arrangement of design" of these elements, create a unique trade dress "look" that identifies the source of the product. *LeSportsac, Inc v. K mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985). Aside from the transparent windows in the packaging, which arguably serve the functional purpose of allowing a consumer to view the pistachios being sold, TWC identifies the remaining elements of its unregistered trade dress as colors, words, and typefaces that, in combination and on their face, are plausibly nonfunctional. We therefore conclude that TWC has plausibly alleged that its unregistered WONDERFUL® packaging is a protectable, nonfunctional trade dress for marketing TWC-branded pistachio products.

*       *       *

For the reasons set forth above, the judgment of the district court is hereby **VACATED** and the matter is **REMANDED** for further proceedings consistent with this order.

<div style="margin-left: 50%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>

11